STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-770

VERNIS S. HINCHEE

VERSUS

SOLOCO, L. L. C.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-614-01
HONORABLE WENDELL R. MILLER, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Jack Derrick Miller
Post Office Box 1650
Crowley, LA   70526
(337) 788-0768
COUNSEL FOR DEFENDANT/APPELLEE:
     SOLOCO, L.L.C.

John A. Cangelosi
King, LeBlanc & Bland, P.L.L.C.
201 St. Charles Avenue, 45th Floor
New Orleans, LA   70170
(504) 582-3800
COUNSEL FOR DEFENDANT/APPELLEE:
     SOLOCO, L.L.C.

Kevin E. Huddell
Jones, Verras & Freiberg, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, LA   70130
(504) 523-2500
COUNSEL FOR PLAINTIFF/APPELLANT:
     Vernis S. Hinchee

AMY, Judge.

The defendant leased property from the plaintiff for use as a storage facility for vehicles and equipment related to its oilfield services operations. The plaintiff filed suit alleging that the property was contaminated upon its return and that the defendant failed to adequately remediate the condition as it was contractually required to do. The trial court entered judgment in favor of the defendant, finding that the plaintiff failed to satisfy her burden of proving contamination on the property. For these reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, Vernis Hinchee, owns property in Jefferson Davis Parish, four acres of which were leased by the defendant, Soloco, LLC, beginning in 1992. Soloco, an oilfield service contractor, used the property as a storage and repair facility for board mats used in its business, as well as a meeting place for its work crews. At the end of the initial five-year lease, Soloco did not renew the lease due to its need for a larger property for its operations. At that time, the plaintiff had a Phase I Preacquisition / Due Diligence Environmental Site Assessment performed on the property. The assessment identified areas of potential concern.[1] Soloco began investigating the areas of concern, having a Phase II Hazardous Materials Site

_____

[1] The Findings and Conclusions portion of the assessment reported "the following evidence of recognized environmental conditions in connection with this property:"

○    The previous construction and storage of sections of board mats for oil and gas exploration roads that may have been preserved with unidentified substances may be a concern in the surficial soils on the subject property. Sampling and analysis of the soils in the areas where boards were stored would be necessary to confirm the presence or absence of wood preservatives in the soil [].

○    The potential for spills from the above ground storage tanks on the northern boundary of the property may be a concern. Sampling and analysis of the soils in the former bermed area would be necessary to confirm the presence or absence of petroleum hydrocarbons in the soil [].

Investigation performed that same year. The investigation concluded, in part, that "the analytical results of the soil analyzed has not been impacted by the previous storage of board mats once stored at the site." It also reported no "environmental threat" on the area where an above ground fuel storage tank was located during the lease.[2] A subsequent, 1998 assessment reported the presence of certain hydrocarbons, and suggested further sampling and analysis, but concluded that the concentrations of hydrocarbons did not exceed the RECAP[3] screening levels it found applicable. Given the findings of its assessment, Soloco notified DEQ of possible groundwater contamination.

The plaintiff filed an initial suit for damages, asserting that Soloco was liable for any contamination. Litigation of that suit was avoided when the parties entered into a new property lease in April 2000 whereby Soloco agreed to provide retroactive and prospective rental payments to the plaintiff while it continued its environmental work on the property.[4] Soloco also agreed to satisfy the following conditions:

---

[2] The summary of the assessment, which was conducted by Gulf Coast Environmental Consultants, Inc., provided:

> It is the opinion of GCECI that the analytical results of the soil analyzed has not been impacted by the previous storage of board mats once stored at the site. The specific parameters analyzed for the presence or non presence of cresol were non detectable for soil composite samples JY #1 - JY #4.

> Also, it appears that the results indicated for samples JYAGT #1, JYAGT #2, JGW #1, and JGW #2 does not pose an environmental threat to the vicinity of the previous location beneath the above ground fuel storage tanks or tank or its surrounding area.

[3] As reported in the record, RECAP is an acronym for Risk Evaluation / Corrective Action Program. It is a program promulgated by DEQ to assess a site's risks to human health and the environment.

[4] Pertinent portions of the lease include:

> _____ Background

> . . . Under the terms of the Initial Lease, Lessee assumed liability for all damages and losses sustained by Lessor arising out of Lessee's acts, omissions and use of the Premises, including but not limited to, contamination and environmental

2

Lessee further agrees during the term of this Lease to perform any and all cleanup, restoration, remediation and other activities at its sole cost and expense which are necessary to (i) eliminate or remediate Hazardous Materials (as hereinafter defined) upon, in or affecting the Premises in accordance with the requirements of, and in order to bring the Premises into compliance with federal, state and local laws, ordinances and regulations; (ii) obtain a "No-Action" Letter issued by the State of

---

damage. The parties acknowledge that during the term of the Initial Lease, contamination and/or environmental damage occurred for which the Lessee bears full responsibility.

In consideration of Lessee's aforesaid liability under the Initial Lease for environmental and other damage to the Premises sustained by Lessor, and Lessee's obligation to remediate the aforesaid damage and pay all expenses associated therewith, the parties hereby agree to enter into this Contract of Lease under the following terms and conditions:

. . . .

III.

Upon execution of this Contract of Lease (the "Lease"), Lessee agrees to pay to Lessor as back rent the sum of One Thousand Dollars ($1,000) per month from March 1, 1997 through December 31, 1999 . . . . Lessee further agrees during the term of this Lease to perform any and all cleanup, restoration, remediation and other activities at its sole cost and expense which are necessary to (i) eliminate or remediate Hazardous Materials (as hereinafter defined) upon, in or affecting the Premises in accordance with the requirements of, and in order to bring the Premises into compliance with federal, state and local laws, ordinances and regulations; (ii) obtain a "No-Action" Letter issued by the State of Louisiana, Department of Environmental Quality which shall indicate that the Premises have been remediated in a satisfactory manner with regard to Hazardous Materials and that no additional action will be required to be taken or expenses incurred in connection with the aforesaid remediation of the Premises; and (iii) restore the Premises to their same condition at commencement of the Initial Lease. As used herein, the term "Hazardous Materials" shall include, without limitation, all substances defined as hazardous or toxic substances or materials, wastes and toxic or non-toxic pollutants and contaminants in the Comprehensive Environmental Response Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.), as amended; those substances listed in the United States Department of Transportation Table or by the Environmental Protection Agency; any material, waste or substance which is petroleum, asbestos, polychlorinated biphenyls, or designated as a hazardous substance to the Clean Water Act; flammable explosives, radioactive materials and such other substances; and materials and waste which are or become regulated as hazardous or toxic under applicable local, state or federal or regulations . . . .

IV.

This Lease shall commence on the 1st day of January, 2000 ("Commencement Date"). The term of this Lease shall expire on the date of receipt by Lessor of a report by Department of Environmental Quality of the State of Louisiana (the "DEQ") which states that the property meets the remediation standards of the DEQ.

3

Louisiana, Department of Environmental Quality which shall indicate that the Premises have been remediated in a satisfactory manner with regard to Hazardous Materials and that no additional action will be required to be taken or expenses incurred in connection with the aforesaid remediation of the Premises; and (iii) restore the Premises to their same condition at commencement of the Initial Lease.

After the execution of this lease, Soloco engaged another firm to perform a RECAP Closure Report of the premises after collection of additional data. This phase proceeded with DEQ's approval. The resulting report issued by Soloco's consultant indicated that benzene and hydrocarbon concentrations on either the soils or groundwater did not exceed the RECAP standards. No further action was recommended by the consultant. Upon application by Soloco, DEQ issued a "No Further Action" letter in February 2001.[5] The letter reported that "the Area of Investigation (AOI) was closed in accordance with RECAP using Management Option 1 standards, and there are no institutional controls on this property." Soloco asserts that its obligations under the April 2000 lease were satisfied upon issuance of the letter.

Several months later, the plaintiff filed the present lawsuit, asserting that

---

[5] The No Further Action Notification provides, in part:

The Louisiana Department of Environmental Quality - Remediation Services Division (LDEQ-RSD) has reviewed your Risk Evaluation / Corrective Action Program submittal dated December 2000 for the above referenced area of investigation . . . Based on this review we have determined that no further action is necessary at this time. This determination is based on the following considerations:

The property was previously used to construct, repair, and store "board road" mats from 1982 to 1997. The potential sources on this site are a UST that was removed in 1994, and two AST's that were removed in 1997. The constituents of concern (COC) detected on the property were TPH-DRO, TPH-GRO, and Benzene. The media impacted by these constituents were soil and groundwater for TPH-DRO and TPH-GRO, and soil only for Benzene. All COC concentrations were found to be below the MO-1 limiting RECAP Standard for a non-industrial site.

The Area of Investigation (AOI) was closed in accordance with RECAP using Management Option 1 standards, and there are no institutional controls on this property. This site was sampled vertically to a depth of 16 ft, such that the AOI is bounded by a series of borings that show no detectable contamination.

Soloco failed to pay rent under the lease after April 2001 and failed to return the property to its pre-lease condition. She requested damages and contractual attorney fees. Thereafter, the plaintiff filed a motion for summary judgment, asserting that due to Soloco's failure to make rental payments after April 2001, she terminated the lease in August 2001 and that she was entitled to rental payments associated with the period from April through August. The trial court granted the partial summary judgment, awarding payment of past due rentals, plus interest. Subsequently, the plaintiff amended her petition, seeking, not only a declaratory judgment and injunctive relief, but damages pursuant to La.Civ.Code art. 2315 as well. These latter tort claims were found prescribed by the trial court as they had occurred prior to the original lease in 1997, yet the claims were not filed until 2001.

The remaining claims proceeded to a bench trial where the parties' presented evidence as to additional environmental testing performed and evaluated after the filing of the lawsuit. However, the trial court found the plaintiff's expert unqualified to testify as to RECAP standards. Ultimately, the trial court entered judgment in favor of Soloco, finding that the plaintiff lacked sufficient proof of contamination.[6]

---

[6] In reasons for ruling, the trial court explained:

> After reviewing the testimony, pre-trial memoranda, and the voluminous evidence offered by the parties, the Court must find that the plaintiffs have not sustained their burden of proving that the land in question is still contaminated as a result of SOLOCO's activity. HINCHEE did not call any experts in RECAP regulations. One was a former employee of the Department of Environmental Quality who did not have authority to speak on behalf of the DEQ and the others worked for environmental testing companies. The plaintiff's "experts" testified as to their own experience in environmental sampling and soil contamination; however, there was no evidence offered at trial that HINCHEE's property could not be used for any purpose the plaintiff wished. SOLOCO's expert, Dr. Kiran Srinivasan, testified about RECAP and was accepted as an expert by the Court. Dr. Srinivasan stated at trial that he couldn't agree that there is contamination present on the property and that he believed that remediation was not necessary. He further testified that there was no reason that the property could not be leased or sold for non-industrial commercial business and/or residential structures. Consequently, after reading the exhibits offered by the parties and reviewing the testimony at trial, the Court finds

The plaintiff appeals, assigning the following as error:

1. The evidence clearly shows that Hinchee's property is contaminated and that remediation is necessary under the terms of the 2000 Lease and under LDEQ standards, and the trial court erred in holding otherwise.

2. Hinchee's environmental expert was eminently qualified to testify as to all of the opinions contained in his expert reports, and the trial court erred in limiting his testimony.

3. The trial court erred in refusing to allow Hinchee's rebuttal testimony to refute the new opinions of Soloco's expert which contradicted the expert's written opinion.

**Discussion**

*Limitation of Expert Testimony*

In the trial court's ruling that the plaintiff failed to meet the applicable burden of proof, it noted that the plaintiff failed to call an expert in RECAP standards. The plaintiff contests this assertion, arguing that the trial court abused its discretion in refusing to permit Ernest Franz, its expert in the field of site investigation and sampling, from offering expert testimony as to RECAP standards.

Mr. Franz explained that he is the owner of Environmental Sampling, Inc., a firm specializing in the investigation and remediation of contamination. The plaintiff engaged the firm to conduct additional sampling and testing on the property in 2002 and, in 2005, to review a RECAP investigation performed by the defendant's consultant. Mr. Franz described his years of work and the licenses and certifications he holds in the remediation field. However, when asked of his educational background, Mr. Franz explained that he had no formal, higher educational degree and that he was self taught. As for the compilation of the data for RECAP analysis,

that the plaintiff has not carried her burden of proving the contamination exists or that she is restricted in her use of the property as a result of SOLOCO's activities.

6

Mr. Franz explained that the geologists, toxicologists, and engineers who work for him "crunch the numbers." He explained that he oversees the process and reviews each project. Vicki Bourgeois, a geologist who Mr. Franz described as an environmental scientist performed the calculations necessary for the work.

Considering the traversal and qualification questioning, the trial court found Mr. Franz unqualified to testify as an expert with regard to RECAP standards.[7] Thus, he was not permitted to offer his opinion as to whether contamination on the property required remediation under RECAP standards.

Louisiana Code of Evidence Article 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A trial court's determination of whether an expert meets these qualifications and whether he or she is competent to testified in a specialized area is subject to the abuse of discretion standard of review. *Cheairs v. State ex rel. DOTD*, 03-680 (La. 12/3/03), 861 So.2d 536. We find no such abuse of discretion.

_____

[7] The trial court explained as follows in limiting the expert testimony:

> I think [Mr. Franz is] certainly a - - a very successful business person or contractor, but I don't think that makes him and [sic] expert in the scientific areas that he's going to have - - that I would think there that he's going to have - - that I would think there would have to be some testimony regarding to be able to - - to be qualified to express those opinions. He has - - he has no scientific background and training whatsoever. He certainly . . . is experienced in - - in the field of hard knocks and that goes far in - - in helping him be qualified as a site evaluation and sampling expert, but the - - the RECAP - - and going over the RECAP cookbook, as it's been presented to the Court or described to the Court, I think is going to require some - - some educational background in geology and chemistry, and I don't see that in this witness. So I'm going to have to limit - - I'm - - I'm going to accept him as - - as a site evaluation and sampling expert, but that is not going to include being able to express opinions on the RECAP cookbook and the standards that are set forth in that regulation.

Despite testimony regarding Mr. Franz's years of experience working in the field, specific testimony regarding his ability to compile the data was general in nature. He stated only that, if he did compile the data, DEQ "would not deny [his] work." Also, the trial court recognized the complexity of the RECAP standards. We do not opine whether the trial court could have permitted testimony in this regard. Instead, we find no abuse of discretion in the trial court's refusal to broaden Mr. Franz's areas of expertise given the limited information provided as to his abilities and qualifications.

Neither do we find merit in the plaintiff's assertion that La.Code Evid. arts. 703[8] and 705(A)[9] permitted Mr. Franz to testify as to data compiled by Ms. Bourgeois. The trial court's ruling does not indicate that it limited the testimony on this basis. Furthermore, the wording of these Articles and the jurisprudence relied upon by the plaintiff assume that the trial court previously found the witness qualified to be an expert in the field. There was no such preliminary finding in this case.

This assignment lacks merit.

*Breach of Contract*

The plaintiff chiefly contends that the trial court erred in finding that she failed to establish breach of contract. She argues that the evidence indicates that the

---

[8] Article 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

[9] Article 705 provides, in part:

> A. Civil cases. In a civil case, the expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

8

property was contaminated and that Soloco failed to remediate the condition in accordance with the requirements of the April 2000 lease.

Paragraph 3 of the lease required that Soloco "perform any and all cleanup, restoration, remediation and other activities at its sole cost and expense which are necessary to:"

> (i) eliminate or remediate Hazardous Materials (as hereinafter defined) upon, in or affecting the Premises in accordance with the requirements of, and in order to bring the Premises into compliance with federal, state and local laws, ordinances and regulations;

> (ii) obtain a "No-Action" Letter issued by the State of Louisiana, Department of Environmental Quality which shall indicate that the Premises have been remediated in a satisfactory manner with regard to Hazardous Materials and that no additional action will be required to be taken or expenses incurred in connection with the aforesaid remediation of the Premises; and

> (iii) restore the Premises to their same condition at commencement of the Initial Lease.

Soloco contends that it satisfied each of these requirements.

As defined in Louisiana Civil Code Article 1906, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." Article 1983 provides that: "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided for law. Contracts must be performed in good faith." A party alleging a breach of contract bears the burden of proving that breach. *Shirley v. Smith*, 99-1281 (La.App. 3 Cir. 2/2/00), 758 So.2d 241, *writ denied*, 00-684 (La. 4/20/00), 760 So.2d 1160.

After review of the record, we find no manifest error in the trial court's determination that the plaintiff failed to meet her burden of proof on her breach of contract claim. In fact, much of the difficulty in the plaintiff's case is that her presentation of the evidence, questioning of the witnesses, and framing of the issues

9

to both the trial court and this court do not focus on what she proved with regard to breach. Rather, the focus appears to be on whether Soloco proved that it, in fact, satisfied the lease in light of her allegation of excessive contamination. This is an erroneous application of the burden of proof.

Eliminate or Remediate Hazardous Materials

The first contractual requirement in the April 2000 lease specified that Soloco was to "eliminate or remediate Hazardous Materials [ ] upon, in or affecting the Premises in accordance with the requirements of, and in order to bring the Premises into compliance with federal, state and local laws, ordinances and regulations." Thus, the plaintiff was required to prove that hazardous materials existed and that Soloco failed to eliminate or remediate these materials to the extent that they were in compliance with the above delineated laws. Considering the evidence presented, the trial court was not required to find she met this burden.

Even accepting the presence of hazardous materials, the plaintiff presented no expert testimony indicating that the contaminants on the property required further analysis or remediation. In fact, she lacked evidence that any condition violated federal, state, or local ordinances or regulations. Recall that the plaintiff's expert was not qualified to testify as to RECAP standards. Furthermore, the trial court's reasons for ruling indicate that it accepted the testimony of Soloco's expert who opined that pursuant to DEQ RECAP standards, not only was the property suitable for commercial or industrial purposes, but was suitable for nonindustrial purposes as well.

We note that the plaintiff asserts that Dr. Srinivasan's report indicates that he personally proposed remediation due to levels of contamination and that his in-court

10

testimony differed. However, the trial court heard both Dr. Srinivasan's testimony and was in possession of the subject report. The trial court was able to identify any conflicts and weigh the evidence accordingly. Additionally, the plaintiff's counsel subjected Dr. Srinivasan to rigorous cross-examination on any alleged disparities.

No Further Action Letter

Next, the contract of lease required Soloco to "obtain a "No-Action" Letter issued by the State of Louisiana, Department of Environmental Quality which shall indicate that the Premises have been remediated in a satisfactory manner with regard to Hazardous Materials and that no additional action will be required to be taken or expenses incurred in connection with the aforesaid remediation[.]" Thus, the plaintiff was required to prove that Soloco failed to obtain such a letter.

As explained in the factual background, DEQ issued a No Further Action letter in February 2001. The plaintiff argues that this letter was inadequate under the terms of the lease as she desires the property suitable for nonindustrial purposes and, she contends, the No Further Action letter does not provide for such use. However, the lease, which was written by an attorney retained by the plaintiff, does not address whether the property was to be returned in a condition suitable for industrial or nonindustrial purposes. Neither did the plaintiff provide extrinsic evidence that required the trial court to find that the contract reflected an intent for the No Further Action letter to specifically anticipate a return to a nonindustrial standard. Louisiana Civil Code Article 2056 provides that "[i]n case of doubt a provision in a contract must be interpreted against the party who furnished its text." *See also Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So.2d 69.

11

Moreover, the condition of the property prior to commencement of the initial lease with Soloco remains unclear from the record as the plaintiff's son testified that the acreage was leased by an oilfield company for the storage of its trucks for a two-and-a-half year period beginning in 1959.

Despite the record's lack of clarity on the parties' intentions as to the objective of the No Further Action letter, Soloco provided expert testimony indicating that, even assuming a nonindustrial standard, no remediation would be required. Given that the plaintiff was required to establish that the No Further Action letter obtained by Soloco was inadequate, and to do so with a preponderance of the evidence rather than mere arguments or assumptions, we find no manifest error in a determination that she failed to meet this burden of proof.

Restoration of the Premises

Finally, the contract of lease required that Soloco "restore the Premises to their same condition at commencement of the Initial Lease." Again, the plaintiff was required to prove that Soloco failed to satisfy this element rather than Soloco proving that it, in fact, satisfied the element. In considering the plaintiff's evidence, the trial court could have considered that the plaintiff did not provide information regarding the condition of the soil or groundwater on the property at the beginning of the initial lease. The trial court was also aware that the property had a prior industrial use. In light of the vagueness of this background information, we do not find that the trial court was required to find that the plaintiff established that the return of the property was insufficient.

We also observe that, while the plaintiff asserts that this third requirement necessarily applies to environmental remediation and standards, we do not find that

12

the trial court was required to find this necessarily to be the case. Rather, the trial court could have considered this requirement to be one involving the condition of the surface area or remaining equipment or structures. Moreover, the first two delineated requirements anticipate that hazardous materials will be "eliminated *or* remediated" and then only to the level of compliance with various laws. Thus, the plaintiff's interpretation of the third requirement could be viewed as inconsistent since it would mandate a broader level of remediation, even elimination. Recall that, "[i]nterpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. *See also* La.Civ.Code art. 2050.[10] So, to the extent the third requirement may be ambiguous, it could be construed against the drafting party, the plaintiff. *See* La.Civ.Code art. 2056; *Campbell*, 817 So.2d 69.

This assignment of error lacks merit.

*Rebuttal Testimony*

At the close of the defendant's case, the plaintiff's counsel argued that the defendant's expert, who testified that no encumbrances on the property were required nor was remediation necessary under RECAP standards, contradicted a report he issued prior to trial. Counsel argued that, pursuant to La.Code Evid. art. 611(E)[11], he should have had the ability to present his own previously uncalled expert in rebuttal. The trial court denied the request and observed that the opinion asserted to be a change in testimony was elicited before the plaintiff rested her case in chief and not when the witness was recalled during the defendant's presentation of evidence. The trial court concluded that any additional witnesses necessary to contravene the

---

[10] Article 2050 provides: "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."

[11] Article 611(E) provides that "[t]he plaintiff in a civil case and the state in a criminal prosecution shall have the right to rebut evidence adduced by their opponent."

opinion should have been presented at that time. Our review reveals no abuse of the trial court's discretion in this regard. *See State ex rel. Guste v. Nicholls College Foundation*, (La.App. 1 Cir. 1991), 592 So.2d 419, *writ denied*, 593 So.2d 651 (La.1992), wherein the first circuit found no abuse of discretion where the trial court refused to allow the State to submit or develop new evidence on rebuttal where the intent of the evidence was not to rebut matters raised by the defendant in its defense, but to introduce new evidence.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed. All costs of this proceeding are assessed to the plaintiff, Vernis S. Hinchee.

**AFFIRMED.**