FREDERICKA HOMBERG WICKER, Judge.
| ¡/This is a workers’ compensation matter in which the employer, (defendant/appellant), Better Services, Inc./Southern Snow, and the employer’s insurer (defendant/appellant), LEMIC, appeal the judgment in favor of the plaintiff/appellee, Dana Faulkner, awarding her temporary total disability benefits, various medical expenses, vocational rehabilitation expenses, and attorney’s fees and penalties.[1] The appellants appeal as errors two evi-dentiary rulings; the finding that Ms. Faulkner suffered a work-related accident; the workers’ compensation judge’s (WCJ’s) failure to find that Ms. Faulkner violated La.R.S. 23:1208 by making false statements concerning her prior medical treatment for the purpose of obtaining workers’ compensation benefits; and, the finding that Ms. Faulkner was entitled to attorney’s fees and penalties. For the following reasons, we affirm the judgment on the merits but reverse the judgment awarding attorney’s fees and penalties.

I;¡Facts

At trial, the parties stipulated that Ms. Faulkner was employed by Better Services, Inc./Southern Snow on or about March 19, 2008. Her average weekly wage on that date was $360. Previously, while employed by Southern Snow on April 28, 2005, she was injured in a job accident.
Ms. Faulkner testified that she had two job accidents during the course of her *650 seven-year employment as a lab assistant. Her job involved preparing gallon jugs for processing concentrate. The first injury occurred on April 28, 2005. At that time she was helping another employee push a tank to the lift in order to place it on the bottling machine. While working, she felt a pop and a burning in her back. She was out of work for about a month and returned in June 2005. She returned to work with the restriction that she could not lift anything over 25 pounds. In addition, she wore a brace. She continued to see Dr. Earl Rozas, her treating physician, every three to six months after her return to work. Dr. Rozas prescribed medication. He also treated her for occasional flare ups. During her course of treatment, she had an MRI and an epidural steroid injection.
According to Ms. Faulkner, she still experienced pain after she returned to work in June 2005. Occasionally she took a few days off because of the pain. However, other than the one month in May 2005 that she took off as a result of the 2005 accident, she was never out of work for an extended period of time as a result of the 2005 accident. Although she was away from work in 2007 for an extended period of time, her hiatus was not related to the accident.
Ms. Faulkner explained that her job was seasonal. At the end of September, in order to save money, the owner would give her an option to go on unemployment for six months. In 2007, she took that option. While out on her | unemployment, she continued to experience pain in her back and saw Dr. Rozas regularly. She returned from unemployment in March 2008.
Upon returning, she was placed on full duty despite her 25-pound lift restriction. However, she still continued to wear her back brace. She was still seeing Dr. Ro-zas every three to six months for the back injury she had in 2005.
Ms. Faulkner testified that on March 19, 2008, she was working alone on the bottling machine. As she turned to take the bottle off the machine to place it into the box, she had a “horrific” burning pain in her left lower back that was shooting down her leg. Afterwards, she could no longer function. Ms. Faulkner reported the accident to three employees: Carl Brauner, “Crystal”, and Mary Israel. Ms. Faulkner was required to report the incident to Ms. Israel, who functioned as the bookkeeper.
According to Ms. Faulkner, she called Dr. Rozas’ office on the date of the accident and spoke to the secretary or nurse, describing the accident she had that day. The person informed her that there were no openings until Wednesday, March 26, 2008. Ms. Faulkner scheduled an appointment for March 26.
When she saw Dr. Rozas on March 26, Dr. Rozas told her she could not return to work. He ordered another epidural steroid injection as well as another MRI. Dr. Rozas told her that she had a tear in her spinal cord that was leaking fluid into her central nervous system — a condition that she did not have prior to 2008. She understood that after the new MRI in 2008 her back condition had worsened since the 2005 MRI. She was under the impression that she had three ruptured discs. In addition, Dr. Rozas told her that she could not return to work in any capacity.
At the time of trial, in April 2010, Ms. Faulkner had also been seen by several other doctors for her injuries. These included: Dr. Daniel Trahant (a | r,neurologist), Dr. Paul J. Hubbell, III and Dr. Hyde (spine specialists), and Dr. Moh-not (a neurologist).
Ms. Faulkner testified that the state sent her to see Dr. Trahant when she *651 applied for disability. After seeing Dr. Trahant, she received Social Security Disability benefits of $686 a month. Dr. Tra-hant told she was qualified for disability because of the tears in her back and her bulging discs.
Ms. Faulkner testified that her present injury from the 2008 accident was more severe than that of the 2005 incident. After the 2005 accident, she experienced relief from the epidural injection. As a result, she was able to dance, run, swim, walk, plant flowers, fish, ride four wheelers, go grocery shopping, and pick up her granddaughters. She could no longer perform these activities, however, after the 2008 injury.
Ms. Faulkner stated that she has never been paid any workers’ compensation indemnity benefits for the 2008 accident. In addition, the defendants did not approve physical therapy as recommended by the physician. She testified that Mr. David LeBlanc, the insurance adjuster, never returned her phone calls.

Analysis

Evidentiary Rulings

In two specifications of error, appellants challenge the WCJ’s rulings excluding deposition testimony and allowing rebuttal testimony. It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should [fimake its own independent de novo review of the record and determine a preponderance of the evidence. Evans v. Lungrin, 97-0541, p. 6 (La.2/6/98), 708 So.2d 731, 735 (citation omitted). A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id. When such a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Id. (Citations omitted). Because a finding of an evidentiary error may affect the applicable standard of review, we first address the alleged evidentiary errors.

Rebuttal Witness

The appellants argue that the WCJ erred in allowing Ms. Faulkner to call a rebuttal witness when, after she rested her case, the appellants called no witnesses and introduced no new evidence for Ms. Faulkner to rebut. Ms. Faulkner responds that the appellants acted arbitrarily in refusing to call any witnesses after Ms. Faulkner rested. And, the rebuttal witness was proper considering the documentary evidence previously introduced at trial as well as the appellants’ opposition arguments to Ms. Faulkner’s motion for a “directed verdict.”[2]
On the date of trial, Ms. Faulkner filed an amended pretrial statement. Among other things, she listed for the first time as a witness Donald Trooskin, a proposed expert in claims adjusting and handling of workers’ compensation claims. After the defendants objected to the untimeliness of *652 that pretrial notice, the WCJ did not allow the late filing.
17At the beginning of the trial, the parties entered into stipulations and introduced their documentary evidence before the first witness testified. Ms. Faulkner was the sole witness to testify in her casein-chief. After the plaintiff rested, defense counsel rested and stated that the defense would rely on the documents that had already been admitted into evidence rather than any live witnesses. The plaintiffs counsel moved for a “directed verdict,” which the WCJ denied.
Thereafter, when the plaintiff sought to call Mr. Trooskin, the defense objected. Ms. Faulkner’s counsel explained that Mr. Trooskin would rebut allegations that Ms. Faulkner made false statements concerning her prior medical treatment for the purpose of obtaining workers’ compensation benefits. According to counsel, the testimony would rebut previously admitted documents, including Ms. Israel’s deposition testimony as well as Ms. Faulkner’s cross-examination.
Counsel stated that the witness would attest that in his years of experience as a claims adjuster and his experience with claimants who are similar to Ms. Faulkner that Ms. Faulkner acted reasonably and that she never made any intentional misrepresentation for the purpose of claiming benefits.
Defense counsel objected because the defense had not put on any additional evidence to rebut. Therefore, the witness was not a rebuttal witness. Counsel stated that the plaintiff was attempting to use a back door to present a witness who was excluded from her case-in-chief.
The WCJ ruled that the witness would be allowed to testify as a rebuttal witness. The court stated, however, that it would determine what weight, if any, would be given to his testimony.
The trial court has great discretion in controlling the conduct of trial and the presentation of evidence, which includes the power to admit or refuse rebuttal | sevidence. Bernard v. Cox Communications, Inc., 01-1321 (La.App. 5 Cir. 3/26/02), 815 So.2d 259, 267, writ denied, 02-1157 (La.6/14/02), 818 So.2d 782 (citations omitted). However, rebuttal evidence must be confined to new matters adduced by the defense and not to repetition of the plaintiffs theory of the case. Id.
This case is similar to Hinchee v. Soloco, L.L.C., 07-770, p. 13 (La.App. 3 Cir. 12/5/07), 971 So.2d 478, 486-87, writ denied, 08-0065 (La.3/7/08), 977 So.2d 911. In Hinchee, after the defense rested, the plaintiff sought to call as a rebuttal witness someone who had not previously testified. The reported purpose of the testimony was to rebut defense expert testimony that was presented before the plaintiff rested her case rather than when the expert witness was recalled during the defendant’s case. The court found no abuse of the trial judge’s discretion in refusing to allow the testimony as rebuttal evidence on the basis the evidence was not proper rebuttal. Id.
Here, we find that the WCJ erred in allowing Mr. Trooskin to testify. The WCJ committed legal error because the intent of Mr. Trooskin’s testimony was not to rebut matters raised by the defendants in their defense, but to introduce new evidence. The allegations that Mr. Trooskin sought to “rebut” were elicited before the plaintiff rested her case-in-chief and not thereafter. Therefore, any additional witness necessary to contravene the allegations of intentional misrepresentation should have been presented during the plaintiffs case-in-chief.
*653 We now determine whether the legal error interdicted the fact-finding process.
Mr. Trooskin, an insurance adjuster with 42 years of experience, testified as an expert in the area of insurance adjusting. According to Mr. Trooskin, based on his reading of the May 4, 2005 and May 22, 2008 MRI reports, he, as an adjuster, J^would have concluded that the later MRI showed a tear, which was not present on the 2005 MRI. Thus, he believed there was a new accident after the 2005 MRI.
He also testified that he is familiar with the statute that provides forfeiture of workers’ compensation benefits when the claimant makes false statements concerning her prior medical treatment for the purpose of obtaining workers’ compensation benefits, La.R.S. 23:1208. In light of the statute, and considering the depositions of Ms. Israel and Ms. Faulkner, as well as the testimony presented at trial, he, as an adjuster, would have paid the claim for the second accident.
Our review of Mr. Trooskin’s testimony demonstrates that the erroneous admission of evidence materially affected the outcome of trial and was therefore reversible error. His testimony was prejudicial because his testimony provided Ms. Faulkner with evidence to meet her burden of proving that an accident occurred on March 26, 2008. It was also prejudicial because it provided evidence of her defense to the forfeiture allegations. Thus, Mr. Trooskin’s testimony clearly interdicted the factfinding process. Therefore, since the record is complete, we conduct an independent de novo review of the record and determine a preponderance of the evidence.

Dr. EarlJ. Rozas’ Deposition

Dr. Rozas’ deposition was taken on September 30, 2009 at which time both parties were present and participated in the deposition. At the 2010 trial, Dr. Ro-zas’ medical records were admitted into evidence after the defense introduced these and the plaintiff joined in the submission. However, when defense counsel sought to introduce the deposition, Ms. Faulkner’s counsel objected because the deposition was not listed on the defendants’ pretrial statement. Defense counsel responded that there was no prejudice because when the case was last set for trial in March 2010, defense counsel forwarded all of his proposed exhibits to the | mplaintiff, including Dr. Rozas’ deposition, and plaintiffs counsel did not object. The WCJ ruled that the deposition was inadmissible but allowed the defense to proffer the deposition.
Before we undertake our de novo review, we note that the issue of the exclusion of Dr. Rozas’ deposition is rendered irrelevant. His deposition was introduced into the record as an offer of proof. Because our review is de novo, we will review all of the evidence in the record (excluding Dr. Trooskins’s testimony that was erroneously admitted) and give it the weight it deserves.[3] We further note that the deposition testimony was cumulative because Dr. Rozas testified based on his medical records, which were introduced into evidence.
“Unwitnessed Accident ”
Appellants argue that Ms. Faulkner did not carry her burden of proving that she had a job accident on March 19, 2008.
*654 This case concerns an “unwit-nessed accident.” A workers’ compensation claimant has the burden of proof to establish that a work-related accident occurred by a preponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Id. (Citations omitted). In determining whether the worker has discharged his burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. Id. (Internal quotations and citations omitted). As noted in Bruno, corroboration of the worker’s testimony [ nmay be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Ardoin v. Firestone Polymers, L.L.C., 10-0245, p. 5 (La.1/19/11), 56 So.3d 215, 219 (citation omitted).
The appellants argue that the only evidence that Ms. Faulkner had an accident on March 19, 2008 was her own testimony and the testimony of her friend, Ms. Israel. They assert that the testimony of both witnesses was inconsistent with their actions after the alleged accident and inconsistent with the other evidence introduced at trial. Therefore, appellants contend that the testimony of Ms. Faulkner and Ms. Israel was not sufficient to carry Ms. Faulkner’s burden of proving a job accident. In particular, the appellants make the following arguments:
They assert that Ms. Faulkner’s testimony regarding the second accident was discredited by her failure to report the alleged accident.
Ms. Israel testified that Ms. Faulkner reported the accident to her. Her duties included filling out a first report of injury. However, Ms. Israel did not write a report of the accident because Mr. LeBlanc, the adjuster, told her it was unnecessary. Also, Ms. Israel stated that she did not keep an organized record of Ms. Faulkner’s injury.
According to Mr. LeBlanc’s claim notes, there was no notation of a 2008 conversation or of a second accident. Mr. LeBlanc, however, did not testify at trial.
According to Ms. Israel, after Ms. Faulkner described the accident to her Ms. Israel told her to go home and inform Ms. Israel whether she needed to see a doctor.
Ms. Israel’s testimony was consistent with that of Ms. Faulkner. Ms. Faulkner testified that she reported the accident to Ms. Israel as her job required. Ms. Faulkner’s actions in seeking an appointment the day of the accident and in 112obtaining one a week later serve to credit her testimony and that of Ms. Israel’s that an accident occurred on March 19, 2008.
Appellants also argue that Ms. Faulkner did not report her alleged accident to Dr. Rozas when she saw him on March 26, 2008. They assert that her failure to report the alleged accident discredits her story that the accident occurred.
Dr. Rozas’ medical records reveal that it was not until December 10, 2008, approximately nine months after March 19, that the doctor’s records noted the reported accident.
Ms. Faulkner explained the absence of the notation in the doctor’s records. Ms. Faulkner stated that she called her doctor that day but was unable to see him then. Instead, she described her accident to the *655 nurse or secretary and assumed that this person told Dr. Rozas what happened. She also stated that she reported the accident to Dr. Rozas on March 26, 2008. She was not aware that Dr. Rozas’ records failed to note the accident. She discovered the problem from a letter she received that listed the wrong date of injury. So, when she went to see Dr. Rozas in December 2008, she wanted to clarify the date with him. She told him she did not know why “they” failed to list the actual date of the injury.
Dr. Rozas, an orthopedic surgeon, testified that with a regular patient like Ms. Faulkner, he would let the patient tell him if something happened rather than inquire about any new accident. He stated that if she had told him of an event that aggravated the back pain, he probably would have written it down because he would have thought it would be significant. On his December 10, 2008 note describing Ms. Faulkner’s visit, he wrote that she was reinjured on March 19, 2008.
11SAppellants further argue that Ms. Faulkner’s testimony was inconsistent with what she wrote in an admission form submitted to Doctors Same Day Surgery Center on April 22, 2008, one month after the alleged new accident.
The admission form was introduced into evidence. The form, dated April ,22, 2008, requested the date of injury. That item was answered: “April/05.”
Ms. Faulkner testified that after March 26, 2008, Dr. Rozas recommended an epidural steroid injection for her. And she had that at Doctors Same Day Surgery. When she went to that facility, she completed a patient information form. She recognized her handwriting on the form. On the second page it asked whether the injury was a work-related injury and she checked “yes.” And, it asked the date of injury and she wrote April 2005. She agreed that this form was completed on April 22, 2008.
When asked why she did not list the later injury, she replied: “I was referring to the first time. That was my understanding of the question.”
The form requested the “date of injury” and asked whether the injury was work related. In Ms. Faulkner’s case, she had two work-related injuries. Thus, Ms. Faulkner, who had been undergoing regular treatment for her 2005 accident, was confused as to which particular date should be noted.
Furthermore, it is clear from the testimony that in order for Ms. Faulkner to see Dr. Rozas, she needed to make an appointment. Thus, her first contact was with a nurse or secretary. Ms. Faulkner had no means of knowing that her report of the injury to that person was apparently not conveyed to Dr. Rozas. Also, according to Dr. Rozas, he refrained from asking his regular patients about any other accidents. Once Ms. Faulkner discovered the oversight, however, Ms. Faulkner quickly corrected the medical record. According to Dr. Daniel Trahant’s February 16, 2009 report, Ms. Faulkner also reported that date to him.
| uAppellants further argue that the medical evidence confirms that Ms. Faulkner had significant ongoing back complaints prior to her alleged March 19, 2008 accident, including a flare up as recently as January 28, 2008, less than two months before her alleged accident. On that date, Ms. Faulkner identified her back pain as “8” on a scale of ten.
Ms. Faulkner testified that she had flare ups before the 2008 accident. On January 23, 2008, she rated her pain as 8 out of 10. She explained that she had a high tolerance for pain but there were some days that she just could not take the pain.
*656 The evidence established that Ms. Faulkner’s first injury did not result in prolonged disability. After the March 19, 2008 accident there was a significant change in Ms. Faulkner’s ability to function.
Dr. Rozas’ records contained work status reports for January 23, 2008 and March 26, 2008. The January report did not recommend that she not work. It recommended light duty work (no lifting more than 25 pounds), medication, and the back brace. In contrast, the March 26, 2008 report stated: “No work.” It noted that she was unable to function.
The 2008 MRI results, unlike the 2005 results showed a tear. According to Dr. Rozas, the MRI results showed that her condition significantly progressed. The original MRI showed some disc bulges but did not have any tears in the annulus. So that aspect worsened. And, the initial MRI did not indicate the three levels of inflammation of the facet joints as the 2008 MRI did. Dr. Rozas stated that it was more probable than not that additional trauma was responsible for the additional changes in the MRIs.
Finally, appellants argue that Ms. Faulkner’s testimony was discredited because she had a motive to claim a 2008 accident because her claim for indemnity 11sbenefits for the 2005 accident had prescribed. Appellants, however, elicited no testimony from Ms. Faulkner regarding the alleged motive.
Consequently, considering all of the evidence presented, we find that no other evidence discredits or casts serious doubt upon Ms. Faulkner’s version of the incident. Consequently, Ms. Faulkner met her burden of proving that a job accident occurred on March 19, 2008.
This case is in sharp contrast to Ardoin v. Firestone Polymers, L.L.C., 10-0245, p. 5 (La.1/19/11), 56 So.3d 215, 220 where the Louisiana Supreme Court found that the claimant did not meet his burden of establishing a work-related accident. In Ar-doin, among other things, the plaintiff waited an excessive amount of time to report the accident — about eighteen months later — and he repeatedly denied there was an accident.

La.R.S.23:im

The appellants argued below that Ms. Faulkner forfeited the right to workers’ compensation benefits because she violated La.R.S.23:1208. The WCJ concluded that the requisite burden of proof for an R.S. 23:1208 violation was not established.
The Workers’ Compensation Act imposes penalties for willfully making a false representation in connection with a compensation claim. La.R.S. 23:1208 provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
[[Image here]]
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
La.R.S. 23:1208 authorizes forfeiture of benefits upon proof that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for l^the purpose of obtaining or defeating any benefit or payment. The party who requests that the benefits be forfeited must show that the employee’s statements were not only false, but they must also show that the statements or misrepresentations were willful and delib *657 erately done with the intent to obtain benefits. Gibbs v. Delasandro Painting and Decorating, 03-1144 (La.App. 5 Cir. 2/10/04), 868 So.2d 804, 809, writ denied, 04-0608 (La.4/23/04), 870 So.2d 308 (citation omitted).
Appellants contend that Ms. Faulkner made false statements in her deposition to support her claim that she had an accident. Specifically, they argue that Ms. Faulkner falsely denied that she had an epidural steroid injection for back pain between June of 2005 and September of 2007; falsely denied ever being diagnosed with sciatica before March 19, 2008; and falsely denied that she received medical treatment for back pain before April 25, 2005. According to the appellants, Ms. Faulkner made false statements regarding the extent of her prior back condition to support her story that her present complaints were related to an accident on March.
At trial, defense counsel questioned Ms. Faulkner regarding epidural steroid injections. She agreed that in her deposition she testified that Dr. Rozas did not recommend an epidural steroid injection throughout the period between June 2005 and March 2008 and the first time he recommended an epidural injection since May 2005 was in March 2008.
Dr. Rozas’ medical records indicated that Ms. Faulkner received an epidural injection in March 2007. Ms. Faulkner testified that she honestly did not remember because she had so many of “those procedures” that they just seemed to run together. When one finally did work, she was grateful. Ms. Faulkner did not |17explain what she meant by “those procedures.” However, the medical records showed that she had more than two injections.
According to the records of Dr. Rozas’ clinic, The Bone and Joint Clinic, Dr. Scott J. Habetz noted on July 13, 2009 that five days prior to that date, Ms. Faulkner had received her fifth epidural steroid injection.
Also, the medical records of the Doctors Same Day Surgery indicated that before trial, in addition to epidural injections, she also underwent lumbar radiofrequency ablation of the facet nerves where a needle was injected into the affected sites. Dr. Rozas explained that radiofrequency is one of the mechanisms used along with steroid injections. He testified consistently with his recorded notes that when he saw Ms. Faulkner on August 4, 2008, she had facet blocks on June 17, 2008 and radiofrequen-cy on July 8 and July 10 with no long-lasting relief from those treatments.
The appellants assert that Ms. Faulkner’s testimony that she did not remember having the epidural steroid injection in March of 2007 was not credible because the epidural steroid injection on March 20, 2007 was only the second epidural steroid injection. The record, however, showed otherwise.
Moreover, Ms. Faulkner explained that she was forgetful. She testified that had a heart attack in 2009. Dr. Rozas wrote in his notes of March 30, 2009 that Ms. Faulkner reported having a heart attack. Ms. Faulkner also testified that her medications affected her memory. She was told that one of the medications she took, Lyriea, caused concentration difficulty and at times memory loss. Dr. Rozas and Dr. Mohnot prescribed the medication. Dr. Rozas’ medical record listed Lyriea as one of several prescribed medications.
Furthermore, Ms. Faulkner did not minimize her 2005 symptoms because she admitted having flare ups from that injury.
11sBecause of Ms. Faulkner’s occasional forgetfulness coupled with repeated injections (either epidural steroid or radiofre-quency), we do not find that the alleged *658 false statement or representation was willfully made.
Next, appellants argue that in her deposition, Ms. Faulkner falsely testified that she was not diagnosed with sciatica until after her accident on March 19, 2008. Appellants contend that the statement is false because Dr. Rozas’ records showed that he first diagnosed Ms. Faulkner with sciatica on March 12, 2007, one year before her March 19, 2008 accident.
Ms. Faulkner’s counsel asked Ms. Faulkner whether if her medical records from Dr. Rozas showed that she actually had sciatica before 2008, she would have known that. She replied that she is not a doctor and had no idea what sciatica was until 2008. She was told that she had three ruptured discs and “Lumbago.”
The appellants assume that Dr. Rozas informed Ms. Faulkner of the sciatica diagnosis. Ms. Faulkner’s reliance on her understanding of what she had been told by Dr. Rozas does not satisfy appellants’ burden to demonstrate forfeiture.
Finally, appellants argue that Ms. Faulkner testified in her deposition that she had never received medical treatment for her back before April 28, 2005. According to Dr. Rozas’ records, however, Dr. Rozas treated Ms. Faulkner for complaints of lower back pain on March 2, 2004. Ms. Faulkner admitted at trial that around 2004 she injured her back moving furniture. Thus, her deposition testimony was inconsistent with her testimony at trial in that respect.
The burden of proving an R.S. 23:1208 violation requires more than a mere showing of inconsistent statements. Sevin v. Greenbriar Nursing Home, 00-2794, p. 4 (La.App. 1 Cir. 2/15/02) 807 So.2d 1179, 1181 citing Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97), 696 So.2d 73, writ denied, 97-1582 (La.10/17/97), 701 So.2d 1330. Therefore, we find that the requisite burden of proof for an R.S. 23:1208 violation was not established.

Attorney’s Fees and Penalties

Ms. Faulkner sought attorney’s fees and penalties for the defendants’ failure to timely pay medical expenses, indemnity benefits, physical therapy benefits, and other workers’ compensation benefits pursuant to La.R.S. 23:1201. The trial court concluded that the defendants failed to timely pay and awarded Ms. Faulkner penalties in the amount of $8,000.00 and attorney’s fees in the amount of $10,000.00.
La.R.S. 23:1201 is the applicable statute in determining whether an employer should be assessed penalties and attorney’s fees for failure to timely pay indemnity or medical benefits. La.R.S. 23:1201(F)(2), however, provides that such penalties and attorney’s fees for failure to pay timely “shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.”
In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La.R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890.
*659 | snThe appellants argue that the WCJ erred in awarding Ms. Faulkner penalties and attorney’s fees because they reasonably controverted the claim that she had a job accident on March 19, 2008.
Ms. Israel did not submit a written report of the March' 19, 2008 accident. Ms. Faulkner’s treating physician did not have a report of that accident contained in his record of Ms. Faulkner’s March 26, 2008 visit. It was not until approximately nine months later on December 10, 2008 that the doctor’s records contained that report. Furthermore, about one month after the 2008 accident, on April 22, 2008, Ms. Faulkner identified her date of accident as April 2005 to Doctor’s Same Day Surgery Center.
Because of the absence of documentation for nine months after the accident and Ms. Faulkner’s initial inconsistency in identifying the date of the current injury, we find that the claim was reasonably controverted. Accordingly, we reverse the judgment awarding penalties and attorney’s fees.

Decree

For the above and foregoing reasons, on the merits, the WCJ’s judgment is affirmed in part, and reversed in part. We reverse the WCJ’s assessment of statutory penalties and attorney’s fees against the defendants, Better Services, Inc./Southern Snow and LEMIC, and dismiss Ms. Faulkner’s demand therefor. In all other respects, the judgment is affirmed.
Appellate costs are assessed one half to the claimant and one half to the defendants.

AFFIRMED IN PART; REVERSED IN PART

. The parties stipulated as to the claimant’s average weekly rate. The workers’ compensation judge, however, did not calculate the amount of indemnity benefits based on these stipulations. Also, the judge did not calculate the amount of expenses owed. Two members of this panel in a similar case, Murray v. Servall Services, Inc., 09-107 (La.App. 5 Cir. 1/12/10), 31 So.3d 436, dissented from the majority's considering the workers’ compensation appeal as a final appealable judgment even when the court failed to decree the specific amounts owed. Id. at 441-43. Considering that Murray, a five-judge-panel case, considered the merits of that appeal, we likewise do so here.

. A motion for involuntary dismissal is the proper procedural vehicle in cases where the action is not tried before a jury. La.C.C.P. art. 1672.

. Our review of Dr. Rozas’ deposition testimony renders moot the appellants' alternative argument that when excluding the deposition, the trial court should have applied the adverse presumption rule,