STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1095

PRISCILLA EBARE

VERSUS

CUBIC APPLICATIONS, INC.

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 04-05139
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Michael G. Sullivan, Judges.

AFFIRMED IN PART AND REVERSED IN PART.

Dona K. Renegar
Huval, Veazey, Felder & Aertker
Post Office Box 80948
Lafayette, Louisiana 70598-0948
(337) 234-5350
Counsel for Defendant/Appellant:
    Cubic Applications, Inc.

Priscilla Ebare
In Proper Person
18272 Highway 111
Evans, Louisiana 70639
(337) 286-9371
Plaintiff/Appellee

**SULLIVAN, Judge.**

Cubic Applications, Inc., (Cubic) appeals a judgment rendered by the Office of Workers' Compensation (OWC) in favor of its employee, Priscilla F. Ebare. For the following reasons, we affirm in part and reverse in part.

### FACTS AND PROCEDURAL HISTORY

Cubic contracts with the United States military to organize training sessions with simulated combat environments. During the time relevant to this matter, Ebare was employed by Cubic on a part-time basis as a role-player. According to the disputed claim for compensation, Ebare injured her low back on the evening of February 22, 2004, when she stepped into a hole while working on site with Cubic. Ebare filed a petition for workers' compensation benefits in the Rapides Parish OWC on July 19, 2004. Therein, she claimed that although she had been rendered temporarily and totally disabled as the result of her injury, Cubic had failed to pay her any temporary total disability benefits (TTD's) and had arbitrarily and capriciously refused to allow her to see the physician of her choice, Dr. David Delapp. She sought an award of medical benefits and TTD's, plus penalties and attorney fees.

Trial took place on December 5, 2006.[1] The workers' compensation judge (WCJ) entered an oral ruling in favor of Ebare on the date of trial; however, no written judgment was signed until May 14, 2008. In the judgment, the WCJ ruled that: Ebare was injured in the course and scope of her employment with Cubic on February 22, 2004; Ebare was a part-time employee of Cubic; Ebare worked an average of 34.13 hours in the full four weeks prior to the accident and earned

---

[1] We note that while Ebare had previously been represented by an attorney, he withdrew from his representation of her in April of 2006. She did not retain new counsel; thus, she was unrepresented at trial and in this appeal. Ebare has not filed an appellee brief.

approximately $9.67 per hour resulting in total earnings of $329.99 per week; Ebare was receiving health and welfare benefits in the amount of $2.35 per hour for up to forty hours per week therefore entitling her to an additional $80.21 per week in health and welfare benefits based upon her average hours worked of 34.13; Ebare's average weekly wage was $410.20 with a resulting compensation rate of $273.46; Ebare is entitled to TTD's from the date she refused to return to work, April 16, 2004, through the present; Cubic is entitled to a credit for every week in which Ebare received unemployment benefits for a total of a twenty-seven-week credit; Ebare is awarded a $2,000.00 penalty for Cubic's failure to allow her to return to see Dr. Delapp.

Cubic now appeals, assigning the following errors:

1. The trial court erred in finding that an accident occurred based upon Ebare's testimony alone with no corroborating evidence, when Ebare failed to seek medical treatment for over a month after the alleged accident, continued to work full-duty for a month after the alleged accident, and had sought treatment seven months before for similar complaints.

2. The trial judge erred in awarding Ebare TTD's when no physician removed her from work; she was released to light-duty work by her treating physician which Cubic accommodated; Cubic approved all treatment recommended by the physicians, some of which she refused; and, Ebare refused to return to the modified position.

3. Cubic was reasonable in obtaining an opinion from its orthopaedist regarding the relation of Ebare's complaints to an alleged accident verses her pre-existing degenerative condition before paying for continued medical treatment [and thus the trial court erred in awarding Ebare $2,000.00 in penalties for Cubic's failure to allow her to return to Dr. Delapp].

**DISCUSSION**

The Louisiana Supreme Court set out the standard of review to be employed in workers' compensation cases in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted):

2

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error—clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). A worker bringing a compensation action against her employer bears the burden of proving, as a threshold requirement, that she suffered "personal injury by accident arising out of and in the course of [her] employment." La.R.S. 23:1031(A); *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

### Did an injury producing on-the-job accident occur?

In *Bruno*, 593 So.2d at 360-61 (citations omitted), the Louisiana Supreme Court noted that, while "Louisiana courts view the question of whether there was an accident from the worker's perspective[,] . . . the worker's burden of proof is not relaxed. Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence." Regarding the claimant's burden of proof, the *Bruno* court went on to state:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident.

3

*Id.* at 361. In addition, this court has held that the existence of a pre-existing condition alone does not foreclose the receipt of workers' compensation benefits where there is evidence that the on-the-job accident aggravated and accelerated the claimant's pre-existing condition. *Bush v. Avoyelles Progress Action Comm.*, 07-685 (La.App. 3 Cir. 10/31/07), 970 So.2d 63.

Cubic asserts that the trial court erred in finding that an accident occurred based upon Ebare's testimony alone because her testimony was not corroborated by any evidence and because other discrediting evidence exists. Cubic claims that the following factors cast doubt upon the reliability of Ebare's testimony: Ebare's claimed accident was unwitnessed; Ebare did not seek medical treatment for her alleged injuries until over one month after the accident allegedly occurred, during which time she continued to work without complaint; Ebare had a pre-existing degenerative condition in her back for which she had sought medical treatment approximately seven months prior to her alleged accident; Ebare was suffering from severe depression since her earlier divorce and this condition was a factor in her health and her stability in the workplace.

Before issuing his oral ruling, the WCJ stated that he found Ebare to be "a very, very nice person" who was "very straightforward in [her] responses to all the questions." He found that Ebare had an accident on February 22, 2004 and noted that when she sought treatment with Dr. David Delapp, an orthopaedist, on March 25, 2004, she had been diagnosed with acute lumbar sprain/strain. The WCJ observed that Dr. Delapp's records from Ebare's first visit noted that she had a history of degenerative joint disease. He referred to Dr. Delapp's note from Ebare's next visit on April 27, 2004, where Dr. Delapp wrote that an MRI was needed to further

4

evaluate Ebare's continued pain that had been unresponsive to medications and physical therapy. That note went on to state that he had discussed with Ebare his belief "that more than likely she may end up with a chronic problem with which we are going to have to help her." The WCJ noted that the physician who rendered a second opinion as to Ebare's condition at Cubic's request, Dr. James Perry, also an orthopaedist, agreed that a lumbar MRI was needed. He further noted that in an August 9, 2004 letter, Dr. Perry stated his impression that Ebare "had a posttraumatic aggravation of preexisting condition that caused her to become symptomatic."

In *Guilbeaux v. Martin Mills, Inc.*, 93-1359 (La.App. 3 Cir. 5/4/94), 640 So.2d 472, *writ denied*, 94-1444 (La. 9/23/94), 642 So.2d 1291, the claimant felt a sharp pain while cutting fabric at her job. Although she immediately reported her discomfort to her instructor and several coworkers, she continued to work and did not inform her employer that she suffered a work-related accident until approximately three months after the incident, when her doctor told her that the work-related incident was the source of her injury. In reversing the WCJ's finding that Guilbeau had not suffered a work-related accident, we stated that the claimant "should not be barred from recovery because she did not realize or diagnose the full extent of her injury immediately after it happened. Nor should she or any other worker be penalized for trying to work as much as he or she can, despite the pain." *Id.* at 476. *See also Wackenhut Corr. Corp. v. Bradley*, 96-796 (La.App. 3 Cir. 12/26/96), 685 So.2d 661.

In addition to the facts noted by the WCJ, we also find the following information to be important. Although no one witnessed Ebare step into the hole, she testified that because Cubic required that its employees report all injuries, she

5

informed her work group leader, Mae Zolaesque, about her injury and Ms. Zolaesque had filed a report. Although no such report is in the record, Cubic did not dispute that such a report had been prepared. Ebare stated that the reason she was able to keep working after her injury was because she was fortunate enough to have a light schedule with only a few scenarios that included her character and because of the medication that she was taking. She explained that she was not "a doctor person" and that she had hoped that she had just pulled something and that she would get over it soon.

The WCJ obviously found Ebare to be a credible witness, an observation that we will not second guess. After having reviewed the record in its entirety, we find that the WCJ did not err in his determination that Ebare had shown by a preponderance of the evidence that she suffered an injury-producing accident in the course and scope of her employment with Cubic. Cubic's first assignment of error lacks merit.

### *Did the WCJ err in awarding Ebare TTD's?*

This court explained a claimant's burden of proof regarding TTD's in *Gibson v. Shaw Global Energy Services*, 04-547, p. 6 (La.App. 3 Cir. 10/27/04), 885 So.2d 707, 712, *writ denied*, 04-2920 (La. 2/4/05), 893 So.2d 876, stating:

> In order to prove entitlement to temporary total disability benefits[,] . . . a claimant must demonstrate by clear and convincing evidence that he is physically unable to engage in any employment, including working while in any pain. La.R.S. 23:1221(1)(c) and (2)(c). Disability is a question of fact.

As explained by the first circuit in *Bonvillain v. Preferred Industries and LWCC*, 04-849, p. 13 (La.App. 1 Cir. 5/27/05), 917 So.2d 1, 8, "[t]he issue of disability within the framework of the workers' compensation law is a legal rather

6

than a purely medical determination. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony."

Cubic contends that the WCJ erred in concluding that Ebare proved that she was entitled to TTD's because: no physician removed her from work; she was released to light-duty work by her treating physician which Cubic accommodated; Cubic approved all treatment recommended by the physicians, some of which she refused; and because Ebare refused to return to the modified position.

In finding that Ebare had proved her entitlement to disability payments by clear and convincing evidence, the WCJ noted that the employer has a duty to investigate a claimant's ability to work and cannot rely on an earlier medical report authorizing the claimant to perform light-duty work when the employer has subsequent medical information that indicates an ongoing problem and the need for continuing treatment. Referring to this court's decisions in *Warren v. Maddox Hauling*, 02-733 (La.App. 3 Cir. 12/4/02), 832 So.2d 1082, *writ denied*, 03-4 (La. 4/21/03), 841 So.2d 791; *Foster v. Liberty Rice Mill*, 96-438 (La.App. 3 Cir. 12/11/96), 690 So.2d 792; and *Pickett v. Stine Lumber Co.*, 93-1534 (La.App. 3 Cir. 6/1/94), 640 So.2d 769, the WCJ noted the proposition that when a claimant, either at the time of trial or at the time of nonpayment of benefits, is still undergoing testing and treatment with an "indefinite recovery period," she is entitled to recover TTD's.

Anticipating that Cubic might argue that there was no objective evidence that Ebare had a disabling condition because no physician had ever stated as much, the WCJ reiterated that the employer has the duty to investigate a claimant's disability status. He added that Cubic's choice of physician, Dr. Perry, noted that Ebare had radiculopathy (disease of the spinal nerve roots) requiring treatment. Finally, the

7

WCJ made specific mention of the fact that Cubic had not asked Dr. Perry his opinion regarding Ebare's disability status.

Cubic contends that this case is more like *Thibodeaux v. Cajun Restaurant*, 93-1090 (La.App. 3 Cir. 4/6/94), 635 So.2d 522, than any of the cases relied upon by the WCJ. Thibodeaux was injured on December 31, 1990, when he slipped and fell while exiting a walk-in freezer carrying a load of frozen ducks. He initially denied that he had been injured and continued working for over a month after the accident. He was fired in February of 1991 for showing up to work intoxicated, and he never returned to work. He was treated by six physicians for a combined total of at least seventeen office visits. He underwent a multitude of diagnostic tests, including X-rays, an MRI, a CAT scan, a myelogram, a post myelogram CAT scan, a bone scan, and a neurological evaluation. Although he was released to medium work in August 1991, he argued that his disability continued beyond that date. Thibodeaux's last visit to any doctor was on July 16, 1992. Following a trial, the WCJ dismissed Thibodeaux's petition to have his disability benefits extended beyond the date he was released to work. This court affirmed, reasoning that subsequent medical evidence indicating that Thibodeaux may have had several herniated discs did not reasonably controvert the earlier opinion of his treating physicians that he was not disabled beyond August of 1991.

Cubic argues that because it modified Ebare's duties after Dr. Delapp released her to light-duty work on March 25, 2004, and because Ebare did not return to the modified position offered her, the WCJ erred in awarding her TTD's. Cubic's argument is flawed. Dr. Delapp's release came after Ebare's initial visit to him. It was not until Ebare's second visit with him that he recommended that she undergo

8

an MRI because the prescribed medication was not alleviating her continued pain and because her pain was, in fact, increasing due the physical therapy that he had prescribed. Cubic never revisited the issue of Ebare's ability to work despite the fact that her condition had become worse, as noted in Dr. Delapp's note of April 27, 2004, and despite the fact that the MRI, which was performed on June 14, 2004, showed that she had several bulging lumbar discs and significant spinal stenosis (narrowing of the spinal cord). Given the updated picture of Ebare's medical condition and Cubic's failure to inquire about what effect that picture would have on her ability to perform her job, Cubic's insistence that it offered Ebare a position modified to her condition is disingenuous at best.

Unlike the situation in *Thibodeaux,* Ebare was not treated by a multitude of physicians nor is there an abundance of medical records in this case. Nevertheless, based upon our review of the scant medical evidence coupled with the forthright testimony of Ebare as to her continued pain, we conclude that the WCJ had a reasonable basis upon which to conclude that Ebare had proven by clear and convincing evidence that she was entitled to receive disability payments. Accordingly, the WCJ's award of TTD's was not manifestly erroneous, and Cubic's second assignment of error is without merit.

***Did the WCJ err in awarding Ebare penalties for Cubic's failure to authorize a visit to Dr. Delapp in July of 2004?***

A decision by a WCJ on whether to impose penalties and attorney fees is a question of fact that will not be disturbed on appeal absent manifest error. *Bush*, 970 So.2d 63.

Cubic asserts that its delay in authorizing Ebare's July 2004 request to return to her treating physician, Dr. Delapp, was reasonable. In light of Ebare's pre-existing condition, Cubic contends that its decision to obtain an opinion from its physician, Dr. Perry, as to whether Ebare's complaints were caused by the work-related accident or by her pre-existing condition, was not arbitrary or capricious. Citing *Smith v. Town of Olla*, 07-384 (La.App. 3 Cir. 10/3/07), 966 So.2d 1165, Cubic submits that it approved the appointment with Dr. Delapp within one month of Ebare's request, well within the sixty-day delay allowed by the law. Further, Cubic points out that Ebare never kept her appointment with Dr. Delapp after it had been approved.

Disagreeing, the WCJ ruled that because nothing in Dr. Perry's records indicated that Ebare was not in need of further medical care, Ebare was entitled to receive additional treatment from her chosen physician which Cubic could not deny, thus entitling Ebare to a $2,000.00 penalty.

We conclude that Cubic acted reasonably in investigating the cause of Ebare's continuing complaints. Given the fact that Cubic's actions resulted in only a short delay in the approval of Ebare's follow-up appointment with Dr. Delapp, coupled with the fact that Ebare never did keep her appointment with him once it was approved, we find manifest error in the WCJ's conclusion that Cubic acted arbitrarily and capriciously in denying Ebare's request for an appointment with Dr. Delapp in July 2004. The WCJ erred in equating a short delay in approval of medical treatment to the denial of medical treatment. Accordingly, we reverse that portion of the judgment awarding Ebare a $2,000.00 penalty for Cubic's delay in allowing her to return to see Dr. Delapp.

**DECREE**

For the foregoing reasons, the portion of the judgment awarding Ebare a $2,000.00 penalty is reversed. The judgment is affirmed in all other respects. Costs of this appeal shall be split equally among the parties.

**AFFIRMED IN PART AND REVERSED IN PART.**