STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-749

GEORGE KEITH DAY

VERSUS

SUPERIOR DERRICK SERVICES

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 4
PARISH OF LAFAYETTE, NO. 06-06525
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED AS AMENDED AND RENDERED.

Robert B. Purser
Purser Law Firm
Post Office Box 1670
Opelousas, LA   70571
(337) 948-0815
COUNSEL FOR DEFENDANT/APPELLANT:
    Superior Derrick Services

Daren Sarphie
Guillory, Scott & Associates
3045 Ridgelake Drive, Suite 203
Metairie, LA   70002
(504) 838-8883
COUNSEL FOR PLAINTIFF/APPELLEE:
    George Keith Day

**AMY, Judge.**

Alleging that he had injured his neck and shoulder in a work-related accident, the claimant sought workers' compensation benefits from the defendant, his former employer. After a hearing, the workers' compensation judge found in favor of the claimant and awarded medical and indemnity benefits, penalties, costs, and attorney fees. The defendant appeals, asserting that the workers' compensation judge erred in finding that the claimant's injuries were related to his employment accident. The claimant has answered the appeal, seeking additional attorney fees, penalties, and interest. For the following reasons, we affirm the judgment of the workers' compensation judge; grant, in part, and deny, in part, the claimants' request for additional penalties; grant the claimant's request for judicial interest; and award additional attorney fees for work done on appeal.

## Factual and Procedural Background

The record indicates that the claimant, George Day, was employed as a fitter-welder by the defendant, Superior Derrick Services. Mr. Day alleges that he was carrying heavy oak boards up to a derrick platform when he felt a sharp pain in his neck and a "pop" in his neck and shoulder. According to Mr. Day, his neck and shoulder began to hurt, but he continued working for several days until the pain became unbearable. At Superior Derrick's direction, Mr. Day went to a medical clinic. Mr. Day alleges that, after several visits to the clinic, the staff told him that he needed to see a neurosurgeon, but that Superior Derrick refused to pay for it. Mr. Day testified that, because of Superior Derrick's refusal, he told the doctor he was not in any pain so he could go back to work. The record indicates that Mr. Day was arrested later that night and incarcerated for five months, which effectively ended his employment at Superior Derrick.

Approximately one year later, an MRI revealed degenerative disc disease in Mr. Day's cervical spine. The MRI also indicated moderate amounts of central canal stenosis, or narrowing of the spinal canal, and some spinal cord compression. Mr. Day subsequently filed a disputed claim for compensation, seeking indemnity and medical benefits, penalties, and attorney fees. The record indicates that Mr. Day eventually had surgery on his right shoulder, but that Superior Derrick's insurer refused to pay for surgery on Mr. Day's neck. In 2009, before the matter went to trial, the record indicates that Mr. Day awoke to find himself unable to stand. Mr. Day was admitted to the hospital, diagnosed with "incomplete" quadriparesis, and an anterior discectomy was performed.

After a hearing, the workers' compensation judge found that Mr. Day was injured in the course and scope of his employment on July 22, 2005. The workers' compensation judge awarded Mr. Day temporary total disability benefits from the date of his shoulder surgery, subject to a credit for all amounts earned, medical benefits, and penalties in the amount of $2,000.00 for failure to authorize medical treatment. Additionally, the workers' compensation judge awarded $8,000.00 in attorney fees, based on the defendant's failure to reasonably controvert Mr. Day's claim, $1,500.00 to Mr. Day's former attorney, and costs.

Superior Derrick appeals, asserting that "[t]he trial court judge erred by awarding indemnity benefits to APPELLEE after finding that Claimant's disability was causally related to the employment accident." Mr. Day has answered the appeal, seeking additional attorney's fees for work done on appeal, an increase in penalties, and legal interest.

**Discussion**

*Findings of Fact*

In its sole assignment of error, the defendant contends that the workers'

compensation judge erred in finding that Mr. Day's cervical problems were a result of his employment accident.

In workers' compensation cases, findings of fact are reviewed under the manifest error or clearly wrong standard of review. *Burkett v. LFI Fort Pierce, Inc.*, 10-1478 (La.App. 3 Cir. 5/4/11), 63 So.3d 365, *writ denied*, 11-1129 (La. 9/16/11), 69 So.3d 1148. Thus, the appellate court must determine whether the factfinder's conclusion was a reasonable one, not whether it was right or wrong. *Id.* Further, the factfinder's choice between two permissible views of the evidence can never be manifestly erroneous or clearly wrong. *Id.* Even if the appellate court is convinced that it would have weighed the evidence differently if sitting as the trier of fact, the appellate court may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety. *Id.*

In *Ardoin v. Firestone Polymers, LLC*, 10-245, p. 5 (La. 1/19/11), 56 So.3d 215, 218-19, the supreme court discussed the burden of proof for workers' compensation cases where the alleged accident is unwitnessed, stating:

> As in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident. *Nelson v. Roadway Express, Inc.*, 588 So.2d 350 (La.1991); *Prim v. City of Shreveport*, 297 So.2d 421 (La.1974). An employee may prove by his or her testimony alone that an unwitnessed accident occurred in the course and scope of employment if the employee can satisfy two elements: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged accident. *Bruno v. Harbert International, Inc.*, [593 So.2d 357 (La.1992)] (citing *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, 13 *Civil Law Treatise, Workers' Compensation*, Section 253 (2d Ed.1980)). As we noted in *Bruno*, corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. *Id.* (citing *West*, *Nelson*, and Malone and Johnson).

When making a determination as to whether the claimant has discharged his or her burden of proof, the workers' compensation judge should accept as true a

witness's uncontradicted testimony, even where a witness is a party, absent circumstances casting suspicion on the reliability of his or her testimony. *Lopez v. Town of Zwolle*, 07-76 (La.App. 3 Cir. 7/5/07), 963 So.2d 1041. Further, the workers' compensation judge's findings regarding whether the claimant's testimony is credible and whether the claimant has met his or her burden of proof are factual determinations subject to the clearly wrong—manifest error standard of review. *Id.*

As this alleged accident is unwitnessed, we must decide whether Mr. Day's testimony is corroborated by the circumstances and whether "serious doubt" exists regarding his account of what occurred. *See Butterfield v. Turner Indus.*, 06-1098 (La.App. 3 Cir. 2/7/07), 951 So.2d 476, *writ denied*, 07-507 (La. 4/27/07), 955 So.2d 692. In this case, Mr. Day alleged that on July 22, 2005, he injured his neck and back while carrying heavy boards up a flight of stairs. Mr. Day also testified that he informed his immediate supervisor that he might have pulled something, but that he thought he could keep working. According to Mr. Day, he worked for several more days before he sought medical attention.

At Superior Derrick's direction, Mr. Day went to the Occupational Medical Clinic of New Iberia on July 28, 2005. Mr. Day's medical records from that date indicate that he was diagnosed with a strain. The records from Mr. Day's last day of treatment with Occupational Medicine indicate that his pain had either resolved or was very minimal. Mr. Day contends that the clinic staff recommended that he be seen by a neurosurgeon, but that Superior Derrick's personnel and safety manager told him that Superior Derrick would not pay for workers' compensation benefits. According to Mr. Day, he said that he was fine so that he could go back to work. Mr. Day was arrested later that day and did not return to work at Superior Derrick.

4

In August of 2006, Mr. Day had an appointment with his family doctor, Dr. Robert Lahasky. According to Dr. Lahasky, Mr. Day complained of "electrical shocks," numbness in his hands, and a history of right shoulder pain. Mr. Day attributed these symptoms to the July 22, 2005 accident. Dr. Lahasky ordered an MRI, which revealed degenerative disc disease at C5-6 and C6-7. The MRI also showed a moderate amount of central canal stenosis and some cord compression. Dr. Lahasky referred Mr. Day to Dr. Ricardo Leoni, a neurosurgeon.

Dr. Leoni testified at his deposition that, based on the history provided by Mr. Day, he attributed Mr. Day's neck and shoulder conditions to the July 22, 2005 accident. In a letter to Superior Derrick's insurer, Dr. Leoni contemplated that Mr. Day would need surgery on his neck. Mr. Day was also referred to Dr. James Domingue for a neurologic consultation. In Dr. Domingue's opinion, the "vast majority" of Mr. Day's pain came from his right shoulder injury. With regard to Mr. Day's neck condition, Dr. Domingue felt that surgery would eventually become necessary, but it would be best to delay surgery for Mr. Day so that he could keep working. In the meantime, Dr. Domingue suggested physical therapy.[1]

According to medical records, on February 25, 2009, Mr. Day awoke to find that he was paralyzed from the neck down. Mr. Day was admitted to the hospital, diagnosed with "incomplete" quadriparesis, and an anterior discectomy was performed.[2] Mr. Day spent several months in rehabilitation and eventually regained his ability to walk, although he testified that he still has problems with

---

[1] With regard to Mr. Day's right shoulder injuries, Mr. Day was referred to Dr. John Schutte, who performed arthroscopic surgery on Mr. Day's right shoulder in December of 2006. According to Dr. Schutte's records, the surgery resolved Mr. Day's shoulder problems, but he did not expect it to resolve any of Mr. Day's other problems. The record indicates that, in 2006, Superior Derrick's insurer authorized the shoulder surgery, but did not authorize any surgery on Mr. Day's neck. A letter from Superior Derrick's attorney indicates that, on August 21, 2007, the insurer informed Mr. Day that they would not be paying for any further medical benefits.

[2] Dr. Ilyas Munshi testified that this surgery was similar to the one recommended by Dr. Leoni.

muscle spasms, headaches, and incontinence. The doctor that performed Mr. Day's neck surgery, Dr. Ilyas Munshi, testified at his deposition that:

> [Mr. Day] had some event that caused pressure on the spinal cord from the herniation at 5-6 and 6-7 that necessitated the surgery. If those herniations were present prior to this, meaning if those herniations are the same herniations that Dr. Leoni had recommended surgery on, and they had progressed farther, then his – the reason for the herniation in his neck is from the worker's comp injury. It subsequently had progressed further, without the fall or not, that necessitated the surgery.

Superior Derrick contends that several events cast suspicion on Mr. Day's credibility and that his neck injuries could have been caused by several other incidents. Specifically, Superior Derrick contends that Mr. Day could not have been seriously injured when he was initially treated on July 22, 2005, as he rode his bicycle to Occupational Medicine and he was intoxicated when he arrived.[3] Further, Mr. Charles Albert, Superior Derrick's personnel and safety manager, denied that the accident was reported to him on July 22, 2005 and testified that neither Mr. Day's supervisor nor his co-workers had reported or witnessed an accident. With regard to Mr. Day's allegation that Mr. Albert told him that Superior Derrick would not pay for a neurosurgeon, Mr. Albert denied both that he received a phone call from Occupational Medicine and that he said that Superior Derrick would not pay for further medical treatment.

In further support of its argument, Superior Derrick points to Mr. Day's arrest several hours after his appointment at Occupational Medicine. The police report, which was introduced into evidence, indicates that Mr. Day was highly intoxicated and that he threw his keys at his wife. Further, according to the police report, "[o]nce Mr. Day was placed into custody, [he] was hitting his head against the patrol car window and the safety cage of the patrol unit." At trial, Mr. Day

---

[3] Records from Occupational Medicine indicate that, on July 28, 2006, at 1:54 p.m., Mr. Day had a BAC of 0.182 and that, at 2:12 p.m., Mr. Day had a BAC of 0.192.

testified that he "might have" hit his head on the window or the grate. However, he later admitted that he was hitting his head on the patrol unit, but asserted that it "wasn't that hard." Superior Derrick contends that Mr. Day's shoulder could not have been seriously injured if he was able to throw his keys at his wife and hit his head repeatedly on the patrol unit. Additionally, Superior Derrick asserts that Mr. Day's inconsistent testimony on this issue reflects negatively on his credibility.

Superior Derrick also points to an incident in August, 2006. Mr. Day's medical records from that time indicate that, on August 2, 2006, he was hospitalized with heat stroke and seizures. According to the records, Mr. Day was hitting his head on the spine board. Further, the records indicate that Jody Day, Mr. Day's wife, said that Mr. Day was "rolling around on the concrete at the house, hitting [his] head on the cement, growling and shaking [his] head back and forth like an alligator with prey in its mouth."

We find that the workers' compensation judge was not manifestly erroneous in finding that Mr. Day suffered a work-related injury on July 22, 2005. The record permits a finding that Mr. Day's testimony is corroborated by circumstances following the alleged incident. The record, reviewed in its entirety, reveals that Mr. Day had no symptoms prior to the July 22, 2005 accident. Further, his description of the accident to his many treating physicians was consistent over many years. We note that the record indicates that, at the latest, Superior Derrick was aware of the alleged accident on July 28, 2005, when it sent Mr. Day to Occupational Medicine. Notably, several of his doctors testified at their depositions that they considered Mr. Day's neck and shoulder problems to be consistent with or causally linked to the July 22, 2005 accident. *See Faulkner v. Better Servs., Inc.*, 10-867 (La.App. 5 Cir. 5/24/11), 67 So.3d 646; *Hamilton v. Compass Group USA/Morrison*, 07-501 (La.App. 5 Cir. 11/27/07), 973 So.2d 803.

7

*Cf. Ardoin*, 56 So.3d 216; *Butterfield*, 951 So.2d 476.

We note that it was the workers' compensation judge's prerogative to assess credibility, and she found that Mr. Day was credible. Specifically, the workers' compensation judge found that Mr. Day was "extremely motivated and was going to do his best to overcome his limitations" and that "it was more important to [Mr. Day] to earn a living." With regard to Mr. Day's subsequent employment, the workers' compensation judge stated that she was not going to penalize Mr. Day for "trying to go about his business until he [couldn't] do it anymore." Although there were inconsistencies in Mr. Day's testimony, especially concerning his arrest on July 28, 2005, we find that the record supports the workers' compensation judge's findings that these inconsistencies were not significant enough to cast serious doubt on Mr. Day's case and that Mr. Day's other medical issues were "not of such a nature as to be intervening from a causal standpoint."

This assignment of error is without merit.

*Answer to the Appeal*

In his answer to the appeal, Mr. Day seeks an increase in penalties awarded under La.R.S. 23:1201(F). Further, Mr. Day requests that this court amend the judgment to award judicial interest. Finally, Mr. Day seeks an award of additional attorney fees for work done on appeal.

Penalties

With regard to his request for an increase in penalties, the workers' compensation judge awarded Mr. Day $2,000.00 in penalties for failure to authorize medical treatment, "including the cervical surgery," under La.R.S. 23:1201(F). The workers' compensation judge stated that Superior Derrick should have authorized Mr. Day's neck surgery after Dr. Munshi opined that Mr. Day's neck injury was related to the accident. However, in the workers' compensation

8

judge's view, given the full work release generated by Occupational Medicine, Superior Derrick otherwise reasonably controverted the claim. In addition to these penalties, Mr. Day seeks additional penalties for: 1) Superior Derrick's alleged failure to pay TTD benefits from the date of his shoulder surgery on December 15, 2006; 2) Superior Derrick's failure to pay medical bills related to his cervical surgery; and 3) Superior Derrick's discontinuance of benefits on August 27, 2007.

Louisiana Revised Statutes 23:1201 governs penalties under the workers' compensation statutes. Subsection (E) requires payment of medical bills "within sixty days after the employer or insurer receives written notice thereof." Failure to pay these benefits results in penalties under Subsection (F), in the maximum amount of $2,000.00 per claim, with the caveat that penalties and attorney fees are not warranted if the "claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La. R.S. 23:1201(F)(2). *See Alexander v. Autozone, Inc.*, 04-871 (La.App. 3 Cir. 12/8/04), 889 So.3d 366. "The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars." La.R.S. 23:1201(F). The burden of establishing that medical bills were not paid within sixty days of receipt lies upon the claimant seeking sanctions for failure to timely pay medical bills. *Weingartner v. La. Ice Gators*, 05-1211 (La.App. 3 Cir. 11/2/06), 942 So.2d 68.

A claim is reasonably controverted where there is a nonfrivolous legal dispute and/or the employer "possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890.

9

Further, the employer has a continuing duty to assess facts and to investigate an employee's claim before it denies benefits. *Evans v. Hampton Inn*, 08-1195 (La.App. 3 Cir. 3/4/09), 6 So.3d 380. Finally, the workers' compensation judge's determination of whether penalties and attorney fees are warranted is a question of fact which will not be disturbed on appeal absent manifest error. *Ebare v. Cubic Applications, Inc.*, 08-1095 (La.App. 3 Cir. 3/4/09), 5 So.3d 1028.

We turn to Mr. Day's assertion that he is entitled to an additional $2,000.00 penalty for Superior Derrick's alleged failure to pay Mr. Day's medical bills related to his 2009 cervical surgery. In support of this allegation, Mr. Day points to two packets of medical bills, which were submitted into evidence. One packet, dated July 20, 2009, is addressed to Superior Derrick's counsel and requests that the bills therein "be placed in line for payment." A copy of a certified mail receipt is attached, but there is no return receipt or other information in the record indicating that Superior Derrick's counsel received the packet. The other packet is also addressed to Superior Derrick's counsel and dated September 1, 2009.[4] The cover letter for the second packet indicates that the medical bills "will be introduced at the trial on this matter." Mr. Day also testified that he still had medical bills outstanding as of September 11, 2009. A review of the record indicates that, although Superior Derrick paid some of his medical bills,[5] it did not submit any evidence that it did or did not receive the bills in the two packets or that it did or did not pay those bills.

When presented with this evidence, the workers' compensation judge did not award penalties for failure to timely pay medical bills. Given the deferential

---

[4] In brief, Mr. Day asserts that demand for payment of medical bills was made on March 10, 2009.

[5] Specifically, we note that there was evidence indicating that Superior Derrick paid for Mr. Day's visits to Occupational Medicine in 2005 and for his shoulder surgery and related treatment in 2006.

standard of review for such findings of fact and the lack of specificity regarding the payment timeline, we find that the workers' compensation judge did not err in not awarding such penalties. *See Maricle v. Sunbelt Builders, Inc.*, 05-398 (La.App. 3 11/2/05), 916 So.2d 1226, *writ denied*, 05-2506 (La. 3/31/06), 925 So.2d 1261.

Mr. Day also contends that he is entitled to additional penalties under La.R.S. 23:1201(B)[6] and (F) for Superior Derrick's alleged failure to pay TTD benefits from the date of his shoulder surgery until the date of his release. Mr. Day contends that, although the surgery was performed in 2006, Superior Derrick did not pay any TTD benefits until September 11, 2009. We note that the workers' compensation judge found that both Mr. Day's neck and shoulder injuries were related to the July 22, 2005 accident and awarded Mr. Day benefits from the time of the "shoulder surgery, December 15, 2006, and ongoing, subject to credit for all wages earned." Superior Derrick has not contested this award on appeal. We also note that the record indicates that Superior Derrick paid for Mr. Day's shoulder surgery and related medical benefits. According to Mr. Day's testimony, he missed between four to six weeks of work due to the shoulder surgery and did not receive any TTD benefits during that time.

Given that the workers' compensation judge found that Mr. Day was entitled to TTD benefits from the date of his shoulder surgery, that Superior Derrick paid for the shoulder surgery, and that the record does not indicate that Superior Derrick submitted any evidence to show that it reasonably controverted Mr. Day's claim for TTD benefits, we find that Mr. Day is entitled to an additional penalty award in

---

[6] Louisiana Revised Statutes 23:1201(B) states that "[t]he first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid."

11

the amount of $2,000.00 for Superior Derrick's failure to pay TTD benefits after his shoulder surgery.

In addition, Mr. Day asserts that he is entitled to an additional penalty because Superior Derrick terminated medical benefits on August 21, 2007, with no reasonable basis to do so. A letter from Superior Derrick's attorney from that date, stating that Superior Derrick's insurer would not pay for any of Mr. Day's future medical expenses or prescriptions, was submitted into evidence.

Where an employer discontinues benefits, as opposed to nonpayment of benefits,[7] the applicable penalties are delineated in La.R.S. 23:1201(I), which states:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

The supreme court further discussed such penalties in *Iberia Medical Center v. Ward*, 09-2705, pp. 18-19 (La. 11/30/10), 53 So.3d 421, 433-34, stating:

> Awards of penalties and attorneys' fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. *Williams v. Rush Masonry, Inc.*, 1998-2271 (La. 6/29/99), 737 So.2d 41, 46. Although the Worker's Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. *Id.* "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown* [721 So.2d at] 890.

---

[7] We note that Mr. Day initially argues that additional penalties for the termination should be awarded under La.R.S. 23:1201(E), which addresses the failure to pay medical benefits within sixty days, as well as La.R.S 23:1201(F). Considering that Mr. Day contends that he is entitled to additional penalties for improper termination of benefits, we examine his claim under the provisions of La.R.S. 23:1201(I).

Here, the workers' compensation judge found that the claim was reasonably controverted under Subsection (F), with the exception of Superior Derrick's decision to authorize Mr. Day's cervical surgery "at the later date."[8] We note that unreasonably controverting a claim "requires action of a less egregious nature than that required for arbitrary and capricious behavior." *Brown*, 721 So.2d at 890. However, the workers' compensation judge did not address the propriety of penalties under Subsection (I). Where the judgment is silent as to a litigated issue, that demand is considered rejected in the absence of a special reservation. *Cotton v. Delta Queen Steamboat Co., Inc.*, 09-736 (La.App. 4 Cir. 1/6/10), 36 So.3d 262 (citing *R.G. Claitor's Realty v. Juban*, 391 So.2d 394 (La.1980)).

The record indicates that Dr. Schutte released Mr. Day to full duty on January 25, 2007. Although Mr. Day contends that penalties are warranted in part because of Superior Derrick's failure to authorize the anterior discectomy recommended by Dr. Leoni, we note that the workers' compensation judge found that Mr. Day's claim was reasonably controverted until Superior Derrick received information from Dr. Munshi, some two years later, that the surgery performed in 2009 was substantially similar to the surgery recommended by Dr. Leoni. Thus, the record before us indicates that Superior Derrick continued to pay for Mr. Day's medical benefits almost seven months after he was released from Dr. Schutte's care. In light of this evidence, we find no error in the determination that the

---

[8] The discussion contained in the workers' compensation judge's oral reasons for ruling indicate that she awarded "penalties and attorney[] fees for the failure to pick up treatment at the later time frame, and failure to authorize the surgery and treatment. And it's not going to be for the entirety of the case because I do think some of the issues were reasonably controverted." Although Mr. Day's counsel specifically argued that the case was not reasonably controverted at the point where Dr. Leoni recommended the anterior discectomy, the workers' compensation judge noted that Mr. Day was able to work despite his injury until he woke up paralyzed. Further, the workers' compensation judge found that authorization of the surgery did not become "incumbent upon the employer" until Dr. Munshi opined that the surgery he performed in 2009 was substantially similar to the procedure recommended by Dr. Leoni.

termination of benefits was not arbitrary and capricious. Therefore, we do not award additional penalties on that basis.

Judicial Interest

In his answer to the appeal, Mr. Day requests that this court amend the judgment to award judicial interest on the penalties and attorney fees awarded by the workers' compensation judge. Mr. Day asserts that he requested judicial interest.

"In order to obtain interest on an award, a litigant must pray for interest unless interest is allowed by law." *Smith v. Quarles Drilling Co.*, 04-0179, p. 5 (La. 10/29/04), 885 So.2d 562, 565-66. Louisiana Revised Statutes 23:1201.3(A) provides that "[a]ny compensation awarded and all payments thereof directed to be made by order of the workers' compensation judge shall bear judicial interest from the date compensation was due until the date of satisfaction." However, penalties and attorney fees in workers' compensation cases are not considered compensation. *Burns v. Interstate Brands Corp.*, 09-705 (La.App. 3 Cir. 2/3/10) 30 So.3d 271. Thus, in order to receive interest on penalties and attorney fees, a party must pray for interest in his pleadings. *Id*. We note that interest on penalties and attorney fees begins to run from the date of judgment. *Broussard v. Lafayette Parish Sch. Bd.*, 06-268 (La.App. 3 Cir. 9/27/06), 939 So.2d 662, *writ denied*, 06-2591 (La. 1/12/07), 948 So.2d 152.

A review of the record reveals that Mr. Day sought judicial interest in his pleadings for any award of penalties and attorney fees. Therefore, we amend the judgment to reflect that Mr. Day is entitled to judicial interest on the awards of penalties and attorney fees from the date of judgment. *See LeJeune v. State of La., DOTD*, 10-121 (La.App. 3 Cir. 6/2/10), 40 So.3d 458, *writ denied*, 10-1568 (La. 4/8/11), 61 So.3d 680.

14

Additional Attorney Fees

Mr. Day also seeks additional attorney's fees for work performed on appeal. "An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase." *McKelvey v. City of DeQuincy*, 07-604, pp. 11-12 (La.App. 3 Cir. 11/14/07), 970 So.2d 682, 690. In light of our earlier affirmation of the judgment of the workers' compensation judge, as well as an increase in the award of penalties, we award additional attorney fees for work performed on appeal in the amount of $2,000.00.

## DECREE

For the above and foregoing reasons, the judgment of the Office of Workers' Compensation is amended to award the claimant, George Keith Day, an additional $2,000.00 in penalties for failure to pay temporary total disability benefits from the date of his shoulder surgery. The judgment is further amended to reflect that judicial interest is assessed on the awards of penalties and attorney fees from the date of judgment. The judgment finding that the claimant was injured in the course and scope of his employment and awarding penalties for failure to authorize medical treatment, as amended, is affirmed. An additional $2,000.00 in attorney fees is awarded for work performed on appeal. Costs of this proceeding are assessed to the defendant, Superior Derrick Services.

**AFFIRMED AS AMENDED AND RENDERED.**