# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-299


THOMAS GIBSON

VERSUS

RESIN SYSTEMS, INC. AND LUBA


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 13-00683
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and David Kent Savoie, Judges.

### AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

**Marcus Miller Zimmerman**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, LA 70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
     **Thomas Gibson**

**Eric J. Waltner**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1400**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
     **LUBA Casualty Insurance Co.**
     **Resin Systems, Inc.**

**PICKETT, Judge.**

Resin Systems, Inc., and its insurer, LUBA Casualty Insurance Company (collectively referred to as "the employer") appeal the judgment of the workers' compensation judge (WCJ) finding Resin Systems employee Thomas Gibson suffered compensable accidents and awarding damages, penalties, and attorney fees. Mr. Gibson filed an answer to the appeal seeking attorney fees for work done on appeal.

## FACTS

Mr. Gibson filed a disputed claim for compensation (Form 1008) against his employer, Resin Systems and its insurer, LUBA, on January 28, 2013. Mr. Gibson worked as a maintenance man at Resin Systems. He claimed the accident occurred on December 15, 2012 as follows, "Claimant was loading a lowboy with scrap iron, long iron, and drums and he thought he pulled a muscle in his back on Friday. Claimant went back to work on Monday still in pain. He left work early on Tuesday to go to hospital in severe pain." Resin Systems filed a general denial and disputed that Mr. Gibson was injured at work. The matter proceeded to trial.

Following a trial, the WCJ found that compensable accidents occurred, that Mr. Gibson's injuries were related to the accidents, and that the employer owed penalties and attorney fees for failure to reasonably controvert the claim. The employer appeals, and Mr. Gibson has answered the appeal.

## ASSIGNMENTS OF ERROR

The appellants, Resin Systems and LUBA, assert seven assignments of error:

1. The court committed manifest error in holding that the claimant proved the occurrence of an accident.

2. The court committed manifest error in allowing expansion/amendment of the pleadings.

3. The court committed manifest error in failing to find 1208 fraud.

4. The court committed manifest error in giving any weight to the testimony of the claimant.

5. The court committed manifest error in finding causation and in awarding surgery for two levels.

6. The court committed manifest error in awarding penalties and attorney fees.

7. If attorney fees are owed, it was error to accept the affidavit from opposing counsel into evidence and error to award $17,000 in attorney fees and error to award $200 per hour and error to award attorney fees for work done by the paralegal.

Answering the appeal, the appellee Mr. Gibson seeks attorney fees for the work done on this appeal.

## DISCUSSION

We review the findings of fact of a WCJ under the manifest error or clearly wrong standard. *Jim Walter Homes, Inc. v. Guilbeau*, 05-1473 (La.App. 3 Cir. 6/21/06), 934 So.2d 239. We will not disturb the WCJ's findings as long as they are reasonable and supported by the record. *Id.* The determination of the WCJ that a claimant did or did not make a false statement to obtain benefits is a finding of fact subject to the manifest error standard of review. *Hunter v. Alliance Compressors*, 06-100 (La.App. 3 Cir. 6/21/06), 934 So.2d 225.

In *Marange v. Custom Metal Fabricators, Inc.*, 11-2678, p. 6 (La. 7/2/12), 93 So.3d 1253, 1257-58 (citations omitted), the supreme court outlined the burden for a workers' compensation claimant to prove an unwitnessed accident as originally set forth in *Bruno v. Harbert International, Inc.*, 593 So.2d 357 (La.1992):

> The employee in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. An employee may prove by his or her testimony alone that an unwitnessed accident occurred in the course and scope of employment, if the employee can satisfy two elements: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. In deciding whether the plaintiff has discharged his or her burden of proof, the fact-finder should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *Bruno*, 593 So.2d at 361. The fact-finder's determinations as to whether the worker's testimony is credible, and whether the worker has discharged his or her burden of proof, are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.

This court has also noted in a workers' compensation case that credibility calls are the function of the trial court. *McCall v. Wal-Mart Stores, Inc.*, 02-1343 (La.App. 3 Cir. 3/5/03), 846 So.2d 832, *writs denied*, 03-1329, 03-1343 (La.9/19/03), 853 So.2d 639, 641.

The first and fourth assignments of error are interrelated, and we will discuss them together. In its first assignment of error, the employer claims that Mr. Gibson's testimony falls short of this standard of proving an unwitnessed accident. In its fourth assignment of error, the employer argues the trial court erred in giving any weight to Mr. Gibson's testimony. It points to several inconsistencies in Mr. Gibson's trial and deposition testimony. One inconsistency highlighted by the employer is the date of the accident as reported by Mr. Gibson.

3

The form that Mr. Gibson filed to institute this claim lists the date of the accident as December 15, 2012. His chiropractor Dr. Gary Mertz also noted during a regularly scheduled visit that Mr. Gibson suffered a "work injury" on December 15. It is undisputed, though, that Mr. Gibson did not work on December 15, 2012 because it was a Saturday. When Mr. Gibson explained that he was actually hurt lifting iron on Friday, December 14, he explained that he knew it happened early because he went to the dump before lunch time. But Mr. Gibson went to the dump on Monday, December 17, not Friday. Mr. Gibson explained that he actually went to the office Christmas party Friday afternoon.

In addition, Mr. Gibson was not at work on Tuesday, December 18, the day he reported on his Form 1008 as the day the second, aggravating accident occurred. At trial, he explained that he was not at work on Tuesday, December 18, but he was at work on Wednesday, December 19, for a short time before he injured his back lifting the lid to an acetone recovery unit. His medical records indicate that he went to the emergency room on the morning of December 19. Mr. Gibson explained that he was just confused about the dates. Mr. Gibson never returned to work after December 19.

The employer also points out that Mr. Gibson did not tell anyone at work that he had been injured on the job. The employer maintains an injury log book. Mr. Gibson did not note the injury to his back in the injury log book on Friday, Monday, or Wednesday in that log. In his testimony, Mr. Gibson explained that on Friday, he thought he had just pulled a muscle, and he did not consider that an injury. He did record a cut to his hand in the injury log book on Friday, which he explained in his deposition by saying that he thought the injury log was meant for cuts.

4

When he left work after only an hour and a half on Wednesday, Mr. Gibson told his supervisors that his chiropractor had "worked him over real good" and he was sore from that experience. The notes on his time sheet indicate that he had a back injury that was not work related. He did not tell the emergency room staff that he was injured at work. Mr. Gibson testified that he did not want to admit that he was injured at work because he was afraid that by filing a workers' compensation claim he would lose his job.

The employer also presented to the WCJ a theory that Mr. Gibson found out from a doctor that he had a serious back injury that would require surgery. The employer alleges this doctor advised him to file a workers' compensation claim because his deductible was so high and it would take too long to apply for and receive social security benefits. The employer surmised that Dr. Mertz was the doctor who made this suggestion to Mr. Gibson. The only evidence to support this claim was a conversation Mr. Gibson allegedly had with Thomas Thomas, the owner of Resin Systems, in January 2013. Dr. Mertz testified that he told Mr. Gibson to file a workers' compensation claim after Mr. Gibson told him he had been injured at work and the results of an MRI on January 7, 2013, showed a significant injury. The WCJ rejected the employer's theory for lack of any actual proof of its validity, and we find no error in that determination.

In his reasons for ruling, the WCJ discussed Mr. Gibson's testimony:

> Now, claimant['s] counsel candidly described his client's testimony as, quote, "sometimes disjunctive." This description is both apt and charitable. The fact is that Mr. Gibson did at times struggle with some demeanor difficulties on the stand. He seemed – especially when responding to sharp cross-examination – to be unable to provide readily comprehensible responses.

> Clarity of thought and expression are not among his strong points. He does not present well, either physically, verbally, or

5

intellectually.   But his demeanor and countenance aside, the real question is whether the circumstances – viewed in their entirety – support his story, no matter how unartfully he may have presented it to the court.

. . . .

Now, I grant that there are some discrepancies in his testimony. Some are more obvious than others, particularly several inconsistencies between the information he provided in his deposition and the testimony on the stand.

And, he could have been more forthcoming and complete when relating the details of his accident to the emergency room personnel when he did not mention a work accident; however, his underlying motive for this omission, and others, does not seem to have been in the pursuance of a calculated attempt to defraud anyone.

Rather, he explained that he more or less tailored his conversation with the ER personnel around his desire to save his job and to avoid having to file a workers' compensation claim.

. . . .

In this case, given the fact that Mr. Gibson had a less than sharp memory and that his work days were laboriously the same, it is understandable that he may very well have some confusion in correlating exact activities with specific dates and times.

He may very well have been wrong about the precise time of day he felt a pain when he was unloading iron. Perhaps he was wrong about whether he was loading a lowboy or a truck. What is important as regards his credibility is that his consistency – which never varied in detail – was that while lifting and loading he had a sudden onset of pain when lifting a piece of iron beam.  And he was consistent in explaining that when he was lifting and twisting to set down a stainless steel lid that he had a sudden onset of pain so severe that he left work and went to the hospital.

To corroborate his testimony, Mr. Gibson called Dr. Mertz to testify at trial.

Dr. Mertz testified that he treated Mr. Gibson since 2011 for back pain.  Dr. Mertz noted in Mr. Gibson's chart on December 17 that he suffered a work injury on December 15.  He testified that he remembered the conversation with Mr. Gibson

6

at his appointment and that Mr. Gibson was emotional about his injury, but Dr. Mertz did not remember the exact date.

Mr. Gibson also called Brandy McCown, with whom Mr. Gibson lived at the time of the injury. Ms. McCown testified that Mr. Gibson returned from work on Friday and said he was hurt from moving barrels at work. She said he went back to work on Monday, but he was in pain. Finally, she stated that Mr. Gibson went to the hospital on Wednesday. She said Mr. Gibson told her he left work early and went to the hospital because something happened with a big lid at work.

Reviewing all of the evidence presented at trial, we find there was sufficient evidence for the WCJ to conclude that Mr. Gibson suffered workplace accidents. The WCJ clearly found Mr. Gibson's testimony about the fact that he was injured at work credible, though he recognized that his testimony about details of the circumstances of the accidents was not as reliable. Given that credibility determinations are a function of the trier of fact, we find no manifest error in the WCJ's decision to give credence to Mr. Gibson's testimony and his holding that Mr. Gibson suffered workplace injuries.

In its second assignment of error, the employer argues that the trial court erred in expanding the pleadings right before trial to allow Mr. Gibson to present evidence of a workplace accident that occurred on Wednesday, December 19. We find no error in the trial court's ruling. Workers' compensation proceedings are often conducted with more relaxed rules of evidence and procedure. *Taylor v. Tommie's Gaming*, 04-2254 (La. 5/24/05), 902 So.2d 380. A trial court has broad discretion in ruling on motions to amend pleadings, and a decision to accept or reject an amendment should not be disturbed on appeal absent abuse of that discretion. *Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins.*, 93-552

(La.App. 3 Cir. 3/9/94), 640 So.2d 353, *writ denied*, 94-841 (La. 5/13/94), 641 So.2d 204. As we have discussed, the disputed claim for compensation listed the dates of Mr. Gibson's accidents as December 15 and December 18, two days that Mr. Gibson was not actually at work. The form does state that Mr. Gibson left work early on December 18, when in fact he left work early on December 19. The employer had access to Mr. Gibson's time sheets, which indicated that he was not at work on December 18 and left work early on December 19 because of a back injury. We find that the employer suffered no prejudice in the amendment, and we further find no abuse of discretion in the WCJ's ruling allowing the amendment of pleadings.

In its third assignment of error, the employer claims that Mr. Gibson committed fraud to receive workers' compensation benefits in violation of La.R.S. 23:1208 by lying about his prior medical history. The employer points to Mr. Gibson's failure to tell his treating physicians about a car accident in 2000 that caused injury to his back. "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." La.R.S. 23:1208(A). To prove fraud under La.R.S. 23:1208, the employer must prove that the claimant (1) made a false statement or representation, (2) the false statement was willfully made, (3) and the false statement was made for the purpose of obtaining workers' compensation benefits. *See Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7.

The employer in this case notes that Mr. Gibson made inconsistent statements to both the doctors who treated him and his co-workers about his previous injuries. He mentioned the 2000 motor vehicle accident to some of the

8

physicians who treated him. Mr. Gibson mentioned a different 2003 motor vehicle accident as a reason for his back pain to another doctor. He told a co-worker that he had an injury from playing football in high school, according to that co-worker. The WCJ specifically found that Mr. Gibson was able to perform his job, which required great physical labor, adequately for years until he was injured in December 2012. He was able to do this despite the fact that his back was already "defective" and Mr. Gibson was regularly treated by a chiropractor. The WCJ also noted that none of the physicians Mr. Gibson saw believed he was inventing or aggravating his symptoms.

Again, the issue of whether Mr. Gibson willfully made false statements turns, in part, on his credibility. The WCJ found Mr. Gibson to be a poor historian of his own medical history, but found nothing to indicate any omissions were willfully made. Reviewing the record as a whole, we find no manifest error in that determination.

In its fifth assignment of error, the employer argues that the trial court erred in finding that Mr. Gibson was entitled to surgery to repair disc herniations at both level L4-L5 and L5-S1. Dr. Clark Gunderson, the court-appointed independent medical examiner, testified in deposition that his opinion was that the L4-L5 injury was caused by the workplace injury, and the L5-S1 injury was a preexisting condition that was aggravated by the workplace injury. Dr. Patrick Juneau, Mr. Gibson's choice of physician, testified that Mr. Gibson had a previously undiagnosed disc herniation at L5-S1, but that the workplace accident aggravated that injury. Dr. Juneau also opined that the L4-L5 injury was caused by the workplace accidents. Dr. Neil Romero, the employer's choice of physician,

testified that Mr. Gibson's spinal injuries were degenerative and not caused by any acute workplace injury.

The employer points to the testimony of Dr. Gunderson where he states that if a nerve conduction study performed before the accident showed damage at the L5-S1 level in November 2012 was accurate, it may be proof that the L5-S1 injury was not causally related to the accidents. Ultimately, though, Dr. Gunderson agreed with Dr. Juneau that the degenerative condition in that level of Mr. Gibson's spine was aggravated by the workplace accidents. We find there is sufficient evidence to support the decision of the WCJ, and find no manifest error in his determination.

In his sixth assignment of error, the employer argues that the WCJ erred in awarding penalties and attorney fees pursuant to La.R.S. 23:1201(F) for failure to timely pay benefits to the claimant. The trial court awarded a $2,000 penalty for failure to pay indemnity benefits, a $2,000 penalty for failure to pay medical benefits, and $17,000 in attorney fees. The employer argues that the facts of this case show that the claim was reasonably controverted, so the penalty should not have been levied. La.R.S. 23:1201(F)(2).

"An injured worker's claim is considered reasonably controverted when a court determines that the employer or insurer has not engaged in a frivolous legal dispute or that the employer or insurer possessed factual and/or medical information sufficient to reasonably counter that presented by the injured worker." *Hunter*, 934 So.2d at 236. Whether penalties and attorney fees are due is a finding of fact which will not be reversed on appeal unless there is manifest error. *Fontenot v. J.K. Richard Trucking*, 97-220 (La.App. 3 Cir. 6/4/97), 696 So.2d 176. An employer should not be penalized for bringing a close issue to court. *Id.*

10

On this issue, we find the trial court committed manifest error in awarding penalties and attorney fees for failure to pay indemnity and medical benefits. Mr. Gibson did not inform his employer at the time of his accident on December 14 or December 19, 2012, that he had been injured at work. The employer did not learn of the injury until it received a letter from Mr. Gibson's counsel on January 18, 2013. The employer conducted an investigation that discovered scant evidence to support Mr. Gibson's claim. Mr. Gibson's medical records were inconsistent about whether he suffered an injury at work. We find the factual issues surrounding the circumstances of Mr. Gibson's accident at work were sufficiently close that the employer should not be penalized for bringing the case to court. The award of penalties and attorney fees is reversed.

Because we find that no penalties or attorney fees are due, the employer's seventh assignment of error seeking a reduction in the amount of attorney fees is moot. Likewise, we find no merit in Mr. Gibson's answer to the appeal seeking attorney fees for work done on appeal.

## CONCLUSION

We reverse the award of penalties and attorney fees to Mr. Gibson. In all other respects, the judgment of the WCJ is affirmed. Costs of this appeal are assessed to Resin Systems, Inc. and LUBA.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

11