# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-944 consolidated with 16-945

JEREMY J. LEBOUEF

VERSUS

RPC, INC. D/B/A CUDD ENERGY SERVICES

### 16-945 consolidated with 16-944

JEREMY J. LEBOUEF

VERSUS

RPC, INC. D/B/A CUDD ENERGY SERVICES

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 15-00967 C/W 15-00970
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Mark L. Riley**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Jeremy J. LeBouef**

**Scott F. Higgins**
**Jeansonne and Remondet**
**Post Office Box 91530**
**Lafayette, LA   70509**
**(337) 237-4370**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **RPC, Inc., d/b/a Cudd Energy Services**

**AMY, Judge.**

The workers' compensation claimant sought benefits from his employer in connection with injuries he allegedly sustained in two work-related accidents. The employer defended the claims by noting that the claimant's medical records indicated that the second accident was caused by a possible opiate overdose and arguing that the claimant's alleged injuries predated both accidents. The employer also filed a reconventional demand against the claimant, alleging that the claimant had willfully made false statements and misrepresentations in order to obtain benefits, and that accordingly, the employer was due restitution pursuant to La.R.S. 23:1208. The workers' compensation judge dismissed both claims as well as the employer's claim for restitution. Both parties appeal these consolidated matters. For the following reasons, we affirm.

### Factual and Procedural Background

According to the record, on February 12, 2015, Jeremy J. LeBouef filed two disputed claims for compensation (Form 1008s) against his employer, RPC, Inc. d/b/a Cudd Energy Services (Cudd). The first Form 1008, bearing Office of Workers' Compensation (OWC) docket number 15-00967, stemmed from an alleged accident that occurred on March 6, 2014, in which the claimant asserted that, while attending a safety meeting at his employer's Broussard office, the chair in which he was sitting broke, "causing him to fall and injure his thoracic and lumbar spine."

The second Form 1008, bearing OWC docket number 15-00970, stemmed from an alleged accident that occurred in Pennsylvania on January 23, 2015, in which the claimant asserted that, while loading his truck to travel from the bunkhouse to a job site, he slipped on icy ground and fell, hitting his head. He

testified that he has no memory of what occurred after the fall and that he only remembers waking up in the hospital. He further alleged that he was unconscious for approximately three hours until a coworker found him in the bunkhouse and that he suffered "head injuries, an injury to the hip leading to necrosis with hip replacement, and an aggravation of the prior back injury from the March 6, 2014 accident."

Cudd denied liability for both claims.[1] Upon Cudd's motion, the workers' compensation judge consolidated the claims. By an Amended Answer and Reconventional Demand, Cudd asserted that the claimant "violated [La.R.S.] 23:1208 by willfully making misrepresentations and false statements about his past history of medical treatment, how the accidents occurred, and his injuries from the accidents[,]" and that "such misrepresentations and false statements were made intentionally and for the purpose of obtaining worker's [sic] compensation benefits." Accordingly, Cudd sought forfeiture of benefits paid, as well as restitution of costs and attorney fees.

At trial, Cudd asserted that the 2015 accident resulted not from slipping on icy ground, but from an opiate overdose, such that the claimant should be barred from receiving compensation per La.R.S. 23:1081.[2] In support of this assertion,

---

[1] Cudd has not paid any benefits to date relative to the alleged 2015 accident. Both parties stipulated at trial that "no compensation has been paid as a result of either 1008." However, and although Cudd specifically denied liability for the 2014 claim, the claimant testified that he missed two weeks of work following the alleged 2014 accident with no interruption in pay. Additionally, a nurse from Axiom Medical Consulting, who spoke with the claimant following the 2014 accident, testified that he told her that he "would prefer to use first aid measures" as opposed to seeking professional medical treatment. When asked at trial if he was "aware of any medical records, other than the Axiom records a week following [his] incident, which relate any injuries or any treatment [he] received to the March 6, 2014 accident[,]" the claimant replied, "Not that I know of, no."

[2] Louisiana Revised Statutes 23:1081 provides, in pertinent part:

(1) No compensation shall be allowed for an injury caused:

2

Cudd pointed to records from emergency medical services and hospital records immediately following the accident. The hospital records provide an assessment of "[u]nresponsiveness and hypothermia in the setting of suspected narcotic overdose" and indicate that there was "[n]o established cause albeit with suspicion of medication overdose as a basis for present circumstance." The records further indicate that the claimant regained consciousness after being administered Narcan, which, according to the deposition testimony of Cudd's emergency medicine expert, Dr. Michael Odinet, is "a reversal agent for opioids -- opiates." Dr. Odinet also testified that Narcan "won't do anything" unless the person is suffering from an opiate overdose. Additionally, emergency medical services records indicate that the claimant was "unresponsive," that his "pupils were noted as constricted" and that he had "red 'frothy' liquid coming from his mouth[,]" symptoms which Dr. Odinet described as consistent with opiate overdose.

The hospital records further indicate that his urine tested positive for opiates, and that emergency medical services had reported that he had a "fresh needle mark to the left forearm[,]" but that the claimant denied "injecting himself with anything" and denied drug use. When asked at trial why the hospital records indicated that he had opiates in his system at the time of the accident, he replied, "I think I took one earlier in the day[,]" thereafter clarifying that he had taken the pain medication Norco, for which he had a prescription, because he was "in pain." When asked at trial why the hospital records indicated that there had been a fresh

<hr />

. . . .

(b) by the injured employee's intoxication at the time of the injury, unless the employee's intoxication resulted from activities which were in pursuit of the employer's interests or in which the employer procured the intoxicating beverage or substance and encouraged its use during the employee's work hours[.]

3

injection mark in his arm, he stated that he had "never injected any medications before" and that he had "splatter marks" on his arms from welding.

Dr. Odinet, who did not personally examine the claimant but evaluated his medical records, testified that he believed an opiate overdose was "definitely, the most likely cause" of the 2015 accident. He pointed out in his testimony that, despite the claimant's allegation that he had a "knot" on his head, none of the hospital records indicate that the claimant suffered any head injuries, as a physical examination of his head was described as "atraumatic[,]" and two CT scans taken at the hospital following the accident revealed no abnormalities. He also testified that he believed the claimant's medical records revealed a "pattern of drug seeking behavior[,]" as he saw two pain management doctors concurrently, and in April 2013, he had a Norco prescription from each doctor.

In addition to its intoxication defense, Cudd further asserted that the claimant's alleged injuries pre-existed both alleged accidents. In support of this assertion, Cudd presented medical records predating the 2014 accident, dating back to 2004, indicating a history of the claimant complaining of back and/or hip pain. Cudd stated that the records revealed that the claimant saw a pain management doctor for "chronic and daily low back pain" "nearly every month between March 2013 and the March 2014 work accident[,]" and that notably, the claimant met with another pain management doctor the day before the 2014 accident and was sent home from work that day due to low back pain. The claimant did not dispute the accuracy of these records during cross-examination, admitting that he had sought treatment for "some back problems" prior to the 2014 accident. He further stated that his back pain "got extremely worse" after the 2014 accident, but then "started to" improve. However, he testified that after the 2015 accident, his back pain

4

again "got extremely worse" and that he "could barely walk[,]" rendering him unable to work until his doctors cleared him for work in October 2015.[3] However, the record indicates that a doctor that he saw in Pennsylvania, Dr. Steven Renzi, released him for full duty on January 27, 2015.

Regarding his alleged hip injury, orthopedic surgery expert Dr. Harold Granger, who independently examined the claimant in September 2015, testified that the claimant suffered from necrosis of the femur, but that he did not believe that the condition was related to either work accident because it is "not something that shows up acutely after a fall. This is something that has been there a while." Moreover, the claimant's treating physician for his hip, Dr. Scott Yerger, stated in an operative report dated May 19, 2015 that the claimant "underwent left total hip arthroplasty . . . performed secondary to avascular necrosis, likely due to alcohol usage." This report further states that "today [the claimant] eluded [sic] to severe alcohol usage that prior to this he has not been forthcoming with[,]" and that Dr. Yerger "expressed the need for him to seek alcohol and drug counseling[.]"

By oral ruling, the workers' compensation judge dismissed both of the claimant's disputed claim forms, finding that the claimant "failed to meet his burden of proof that he sustained an accident on January 23, 2015." Additionally, the workers' compensation judge dismissed Cudd's reconventional demand, finding that Cudd "failed to meet their burden of proof that Mr. LeBouef violated the provisions of the Louisiana Revised Statute[s] 23:1208."

---

[3] At the time of trial, the claimant stated that he had not returned to work, citing difficulty in obtaining employment.

The claimant appeals,[4] assigning as error the following:

1. The trial court erred in finding Mr. LeBouef failed to meet his burden of proof regarding the January 23, 2015 accident, and dismissing the claims raised in the second Form[ ]1008.

2. The trial court erred in finding Mr. LeBouef's injuries were not caused by or aggravated by the January 23, 2015 accident.

Cudd filed an answer to this appeal, assigning as error the following:

1. The trial court erred in finding that Defendant did not meet its burden to show that Mr. LeBouef violated the provisions of Louisiana Revised Statute[s] 23:1208 and that restitution of legal expenses should be paid.

Cudd further requests this court to "assess a fine, and award restitution in the amount of Defendant's legal expenses."

**Discussion**

*Alleged 2015 Accident*

In his first assignment of error, the claimant argues that the workers' compensation judge erred in finding that he failed to meet his burden of proof regarding the alleged 2015 accident. To receive compensation from an employer, an employee must prove, by a preponderance of evidence, "personal injury by accident arising out of and in the course of his employment[.]" La.R.S. 23:1031(A). *See also Marange v. Custom Metal Fabricators, Inc.*, 11-2678 (La. 7/2/12), 93 So.3d 1253. According to La.R.S. 23:1021(1), an accident is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

---

[4] Although Cudd appealed from the ruling as it related to both alleged accidents, the claimant asserts that his claim relative to the alleged 2014 accident is "not at issue in this appeal," as Cudd "paid the wages and medical accordingly[.]"

An employee's testimony alone may prove that an unwitnessed work-related accident occurred if: "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Marange*, 93 So.3d at 1257. Moreover, "determinations as to whether the worker's testimony is credible, and whether the worker has discharged his or her burden of proof, are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." *Id.* at 1257-58.

In rejecting the claimant's assertion that he sustained an injury in the course and scope of his employment in January 2015, the trial court explained:

> As to the January 23, 2015 incident, Mr. LeBouef testified he had just finished getting off of work, and there was a service call and he was loading his truck to go to a service call. There was snow on the ground. He testified he remembered loading his truck, and slipping and falling, but did not remember anything after that. He testified the next thing he remembered was waking up in the hospital. He testified that as of October, 2015, the doctors indicated he could go back to work.
>
> Mr. LeBouef testified that the hospital records in Pennsylvania indicated he had some opio[i]ds in his system at the time of the January accident because he took one Norco earlier in the day. As far as the problems Mr. LeBouef was having when he got to the hospital, he testified he was dizzy, confused, slurred speech, pain in his shoulder and back area, lower back and his hip. When he got back home, he saw Dr. Araujo, Dr. Karim and Dr. Lasseigne. Mr. LeBouef testified as to the hospital records indicating that he had injection marks in his arms. Mr. LeBouef testified he never injected any medications before, and that he was doing a lot of welding and he had splatter marks all over his arms.

The trial court then provided a brief overview of the claimant's medical history prior to both accidents, and then stated:

> The Western Alliance Emergency Services records for date[] of service 1/23/15 stated the patient was found unresponsive in the bunk room by his supervisor with red frothy liquid coming from his mouth. The TCH Emergency Department records dated 1/24/2015 states HPI:

7

This is a 35 year old young man working in the natural gas fields, also suffering from spinal stenosis for which he has epidural shots several times a year as well as administered steroid shots into his back more intermittently, additionally on Parafon Fort 500 mgs BID and Norco 10/325, last filled on 12/29/14 #120 tablets which is gone, the patient after having been last seen about four hours before being found in his apartment unresponsive on the floor. EMS was activated and transported patient to the TCH ER in route awaking, struggling, nevertheless with vitals. No established cause albeit with suspicion of medication overdose as a basis for present circumstance. Other current facility-administered medications Naloxone (Narcan) injection 2 mg. Under Assessment/Impression: unresponsiveness and hypothermia in the setting of suspected narcotic overdose.

A note dated 1/24/15, patient more cooperative, comprehending situation better. Patient denies drug use and reports he has been out of Norco for 10 days. EMS reports patient has a fresh needle mark to the left forearm. Patient denies injecting himself with anything.

. . . .

In assessing the testimony of Mr. LeBouef, the Court observed his gestures, tone of voice, responses and reactions to questions.

As to the January 23, 2015 incident, the Court finds that Mr. LeBouef's testimony was not credible. Considering the law and the evidence, the totality of evidence, the Court finds that Mr. LeBouef failed to meet his burden of proof that he sustained an accident on January 23, 2015.

After reviewing the record, we find no manifest error in the workers' compensation judge's determination that the claimant failed to meet his burden of proof regarding the purported 2015 accident. Namely, the claimant's version of events was unwitnessed, and he testified that he had no recollection of the events after the alleged fall. Furthermore, and although he was found at the work site bunkhouse, Cudd presented evidence regarding a potential narcotic overlay. Additionally, recall that the claimant's medical records, as well as Dr. Granger's deposition testimony, indicate alternative causation of the alleged injuries.

Accordingly, we find that this assignment of error lacks merit.

8

*Causation/Aggravation of Injuries*

In his second assignment of error, the claimant asserts that the workers' compensation judge erred in finding that the claimant's injuries were not caused by or aggravated by the 2015 accident. However, our conclusion that the workers' compensation judge did not manifestly err in determining that the claimant failed to prove a work-related accident, as addressed above, renders this argument moot.

*Reconventional Demand*

Cudd answers the appeal and, in its sole assignment of error, asserts that the workers' compensation judge erred in finding that it failed to meet its burden of proving that the claimant violated La.R.S. 23:1208,[5] and in denying its claim for restitution. To prove that a claimant committed fraud pursuant to La.R.S. 23:1208, the employer must prove that the claimant "(1) made a false statement or representation, (2) the false statement was willfully made, (3) and the false statement was made for the purpose of obtaining workers' compensation benefits." *Gibson v. Resin Systems, Inc.*, 15-299, p. 8 (La.App. 3 Cir. 10/7/15), 175 So.3d 1141, 1147.

Additionally, according to La.R.S. 23:1208(D), "any person violating the provisions of this Section . . . may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only

_____

[5] Louisiana Revised Statutes 23:1208 provides the following, in pertinent part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

9

up to the time the employer became aware of the fraudulent conduct." According to La.R.S. 23:1208(C)(4), "benefits claimed or payments obtained" includes "the reasonable costs of investigation and litigation." *See Wood v. Brian Harris Autoplex*, 04-1316 (La.App. 1 Cir. 8/3/05), 923 So.2d 17. As it provided no benefits related to the alleged 2015 accident, Cudd focuses on its claim for costs of litigation and attorney fees.

In denying Cudd's reconventional demand, the trial court stated that, "[c]onsidering the law and the evidence, the defendant failed to meet their burden of proof that Mr. LeBouef violated the provisions of the Louisiana Revised Statute[s] 23:1208. Accordingly, the 23:1208 defense is denied." On review, we are mindful that a workers' compensation judge's determination as to whether the claimant made "a false statement to obtain benefits is a finding of fact subject to the manifest error standard of review." *Gibson*, 175 So.3d at 1143.

In *Russell v. H & H Metal Contractors, Inc.*, 11-27, p. 13 (La.App. 3 Cir. 6/1/11), 65 So.3d 806, 816, a panel of this court noted that although the record indicated that the claimant in that case "made several inconsistent statements or omissions about his prior medical history, 'not every false statement supports a finding of fraud.'" (quoting *Int'l Maint. Corp. v. Stoddard*, 05-676, p. 2 (La.App. 3 Cir. 12/30/05), 918 So.2d 1077, 1079). Rather, the false statement or misrepresentation "must be made for the purpose of obtaining benefits." *Id.*

Further, in *Faulkner v. Better Services, Inc.*, 10-867, p. 16 (La.App. 5 Cir. 5/24/11), 67 So.3d 646, 657, the employer argued that the claimant violated La.R.S. 23:1208, as she "made false statements in her deposition to support her claim that she had an accident." At trial, when confronted with medical records showing inconsistencies with her deposition testimony relative to the date she had

10

received an epidural injection, the claimant testified that "she honestly did not remember because she had so many of 'those procedures' that they just seemed to run together." *Id.* at 657. Additionally, she "explained that she was forgetful" and that "one of the medications she took, Lyrica, caused concentration difficulty and at times memory loss." *Id.* at 657. The fifth circuit stated that, because of the claimant's "occasional forgetfulness coupled with repeated injections[,]" it did not find "that the alleged false statement or misrepresentation was willfully made." *Id.* at 657-58.

As Cudd points out, the record in this case reveals obvious discrepancies between the claimant's attribution of his injuries to a work-related accident and his medical records. Cudd contends that the claimant's slip-and-fall claim was "fabricated" and that "there was no slip and fall on the ice, but rather Mr. LeBouef overdosed on opiate narcotic medication." Cudd further argues that, "in light of the evidence, it is difficult to reconcile the court's finding that no work related accident occurred with his finding that Mr. LeBouef did not violate La.R.S. 23:1208."

Undoubtedly, the workers' compensation judge denied the finding of an "accident" for workers' compensation purposes. Apparent from the record, however, is the claimant's explanation that he could not recall the events that occurred after the purported fall. Yet, and in addition to the claimant's confused recollection of events, the claimant was found at the work site bunkhouse, and was noted to be hypothermic in the resulting emergency room records. Moreover, the medical records reveal a significant medical and substance usage overlap to further muddle the claimant's representation of causation. When confronted at trial with statements that he made in his deposition that were inconsistent with his trial

11

testimony, the claimant pointed out that, as he stated in his deposition, he was on Norco and that Norco "hurts with [his] memory loss[.]" When asked at trial if taking Norco the night before the deposition would have affected his memory, the claimant stated, "I think being on pain medicine, yeah. It took a while for it to get out of my system before my memory started getting better."

Furthermore, the claimant never denied receiving treatment for back or hip pain prior to his alleged accidents. He was confronted with inconsistencies between his medical records and his testimony several times at trial. However, save for the notation of fresh needle marks in the emergency room records after the alleged 2015 accident, he did not dispute the accuracy of these records, instead repeatedly stating that he merely could not remember. Notably, when asked about the hospital records following the alleged 2015 accident, he explained, "I don't remember gaining consciousness. I just remember waking up later, but I don't remember much, so I don't know if it's incorrect." Additionally, recall that the claimant admittedly took Norco on the day of the alleged 2015 accident, a medication which, according to his testimony, affects his memory.

Thus, and although the workers' compensation judge may have determined that the claimant lacked credibility and failed to demonstrate an injury due to a work-related accident, he could have reasonably concluded that the claimant's inconsistent statements were not made willfully, such that they did not amount to fraud pursuant to La.R.S. 23:1208. For these reasons, we find no manifest error in the trial court's denial of Cudd's reconventional demand.

Accordingly, we find that this assignment of error lacks merit.

**DECREE**

For the foregoing reasons, the workers' compensation judge's ruling of July 7, 2016, is affirmed.  Costs of this proceeding are assessed equally to the claimant-appellant, Jeremy J. LeBouef, and the plaintiff-in-reconvention/appellee, RPC, Inc., d/b/a Cudd Energy Services.

**AFFIRMED.**